IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DIAGEO NORTH AMERICA, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| MEXCOR, INC. AND | § | |
| EJMV INVESTMENTS, LLC, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## COMPLAINT

Plaintiff Diageo North America, Inc. ("Diageo" or "Plaintiff"), by its attorneys, alleges as follows for its complaint against defendants Mexcor, Inc. ("Mexcor") and EJMV Investments, LLC ("EJMV," collectively, "Defendants"):

## NATURE OF THE ACTION

1.      This is an action to recover for Defendant's willful acts of trademark infringement, trade dress infringement, unfair competition, and false designation of origin under 15 U.S.C. §§ 1114 and 1125(a); trademark dilution by blurring and tarnishment under 15 U.S.C. § 1125(c); trademark dilution and injury to business reputation under Section 16.103 of the Texas Business and Commerce Code; and trademark infringement and unfair competition under Texas common law.

2.      Plaintiff manufactures, advertises, distributes, and sells CROWN ROYAL® Canadian whisky, a world-famous alcoholic beverage that is packaged in an iconic, distinctive, and famous "purple bag" (the "Purple Bag" mark).  The Purple Bag is velvety and has

1

drawstrings around the top.  Plaintiff's CROWN ROYAL® word mark and Purple Bag mark are the subject of incontestable federal trademark registrations, and are extremely strong and inherently distinctive.  Through CROWN ROYAL® whisky's enormous commercial success, substantial advertising and sales, and through tremendous consumer satisfaction, the CROWN ROYAL® mark and Purple Bag mark have become famous and, accordingly, are exceedingly strong marks entitled to a wide scope of protection.  Photographs of the CROWN ROYAL® product and its Purple Bag packaging are attached at Exhibit 1.  In addition to the core CROWN ROYAL® Canadian whisky product, Diageo has developed and sells several CROWN ROYAL® line extensions under the marks CROWN ROYAL® MAPLE, CROWN ROYAL BLACK®, CROWN ROYAL RESERVE®, and CROWN ROYAL XR®; these products are packaged in CROWN ROYAL® bags in the colors brown, black, gold, and blue, respectively.  Thus, while the Purple Bag mark is famous and is immediately identified with CROWN ROYAL® whisky, consumers have come to understand that CROWN ROYAL® products come in bags in other colors as well.  Photographs of the CROWN ROYAL® line extensions and the corresponding bags are attached at Exhibit 2.

3.    This action arises because Defendants have deliberately and in bad faith embarked on a nationwide scheme to trade on the enormous popularity, goodwill, and consumer recognition of Plaintiff's CROWN ROYAL® brand and the CROWN ROYAL® and Purple Bag trademarks for their own commercial benefit.  On information and belief, Defendants EJMV and Mexcor are acting in concert to accomplish this scheme.  Defendants have begun unfairly marketing, distributing, and selling directly-competing Canadian whisky products under a wealth of infringing and dilutive brand names dominated by the term "CROWN," including Texas CROWN Club, Florida CROWN Club, Tennessee CROWN Club, Arkansas CROWN Club, and

South Carolina CROWN Club.  Defendants were not content to use imitative names alone.  They are advertising, promoting, and selling their infringing products in imitative bags that not only violate Diageo's rights in the Purple Bag mark, but unfairly imitate the overall look and feel of Diageo's CROWN ROYAL® product line.   When exposed to Defendants' whiskies in the marketplace, consumers are likely to mistakenly believe that Defendants' whiskies are affiliated with, sponsored by, approved by, or associated with CROWN ROYAL® whisky, or that Defendants' various whiskies are regional variations or novelty line extensions of CROWN ROYAL® whisky.  Like Diageo, Defendants have selected whisky brand names that emphasize "CROWN," a distinctive and famous term that is closely identified with CROWN ROYAL® whisky.   Indeed, "CROWN" is in many cases the most prominent word on Defendants' infringing products.  Moreover, Defendants regularly depict the term CROWN in a gold script font confusingly similar to the distinctive gold script used by Plaintiff to display its CROWN ROYAL® trademark.   Photographs of the Texas CROWN Club, Florida CROWN Club, Tennessee CROWN Club, Arkansas CROWN Club, and South Carolina CROWN Club products and their accompanying infringing bags are attached at Exhibit 3.

4.      Defendants' packaging and branding exacerbate the likelihood of consumer confusion.  Specifically, Defendants are packaging their whisky products in soft cloth bags or sacks with drawstrings at the top that emulate Plaintiff's Purple Bag packaging and registered trademark as well as the other bags Diageo uses for CROWN ROYAL® line extensions.  While CROWN ROYAL® whisky is sold in a famous Purple Bag and the various CROWN ROYAL® line extensions are sold in black, brown, blue, and gold bags, Defendants' whiskies are sold in bags designed to evoke both CROWN ROYAL® and the geographic region in which each of Defendants' infringing products is sold.  For example, Texas CROWN Club whisky is sold in a

bag that resembles the Texas state flag; South Carolina CROWN Club whisky is sold in a navy blue bag that resembles the South Carolina state flag; Tennessee CROWN Club whisky is sold in a bag that resembles the Tennessee state flag; and Arkansas CROWN CLUB whisky is sold in a bag that resembles the Arkansas state flag.   The bag intended for Southern CROWN Club whisky is grey and incorporates design elements reminiscent of the Confederate flag.   The bag intended for Las Vegas CROWN Club is red and displays cards and gambling chips.   The Florida CROWN Club whisky is sold in a black bag having a depiction of an alligator in gold. Defendants' confusingly similar and dilutive bags immediately evoke Plaintiff's famous Purple Bag mark and other CROWN ROYAL® bags causing consumers to believe that Defendants' products originate with or are regional variations or line extensions from the maker of CROWN ROYAL® whisky.

5.     The parties' respective Canadian whisky products are being sold in the same retail outlets, in many cases side-by-side and even intermingled.   The overall effect of Defendants' activities creates the mistaken impression by consumers that CROWN ROYAL® whisky is now available in novelty packaging that celebrates a particular state or geographic region.

6.     Diageo is already aware of actual confusion occurring in the marketplace as a result of Defendants' infringing products.

7.     Defendants' activities are irreparably injuring Diageo, and will continue to do so unless and until halted by this Court.   Diageo seeks immediate and permanent injunctive relief, statutory, compensatory, and punitive damages, defendant's profits, Diageo's reasonable attorneys' fees and expenses, a product recall, and corrective advertising sufficient to address Defendants' wrongdoing.   Diageo also seeks cancellation of Mexcor's infringing registrations under 15 U.S.C. § 1064, and an order pursuant to 15 U.S.C. § 1119 that Defendants' infringing

U.S. trademark registrations and pending applications that incorporate the "Crown" term and/or Defendants' unlawful "bag" designs be cancelled, withdrawn, and denied registration (some of these registrations and applications are owned by Mexcor, and some of are owned by EJMV).

## PARTIES

8.     Plaintiff Diageo is a Connecticut corporation with a business address of 801 Main Avenue, Norwalk, Connecticut 06851.

9.     On information and belief, Defendant Mexcor is a Texas corporation with a business address of 8950 Railwood Drive, Houston, Texas 77078.

10.     On information and belief, Defendant EJMV is a Texas corporation with a business address of 1401 McKinney Street, Suite 1700, Houston, Texas 77010.  On information and belief, Defendants Mexcor and EJMV share ownership and common interests.   On information and belief, a single individual, Eduardo Morales, is Mexcor's President and the sole member of EJMV.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the subject matter of this action under Section 39 of the Lanham Act (15 U.S.C. § 1121) and 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction over Diageo's related state statutory and common law claims pursuant to 28 U.S.C. §§ 1338 and 1367.

12.     This Court has personal jurisdiction over Defendant Mexcor and Defendant EJMV because on information and belief, (a) both Defendants reside in Texas and this judicial district; (b) Mexcor's and EJMV's principal places of business are located within the Southern District of Texas; (c) at least one of Defendants' infringing whiskey products is available for purchase in the State of Texas and this judicial district; (d) Defendants have committed tortious

acts in the State of Texas and this judicial district, and Plaintiff's claims arise out of such acts; (e) Defendants regularly conduct business in the state of Texas and this judicial district; and (f) on information and belief, Defendants have otherwise made or established contacts in the State of Texas and this judicial district sufficient to permit the exercise of personal jurisdiction.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**A.     Diageo and CROWN ROYAL® Whisky – Marketplace Background**

14.     CROWN ROYAL® Canadian whisky has been marketed and sold in the United States since at least as early as 1954, and the product is currently one of the most widely consumed whiskies in the United States.  CROWN ROYAL® whisky is sold throughout the United States and its annual U.S. sales are currently in the hundreds of millions of dollars.

15.     In addition to CROWN ROYAL® whisky, Diageo also distributes CROWN ROYAL merchandise throughout the United States, including t-shirts, jackets, caps, and other apparel. Both the CROWN ROYAL® and Purple Bag marks have also been used in connection with sponsorships of sporting events, including rodeo, football, and NASCAR.  Such uses of the CROWN ROYAL® and Purple Bag marks in connection with goods and services beyond whisky further strengthen the CROWN ROYAL® brand and broaden the scope of protection afforded the CROWN ROYAL® and Purple Bag marks.

16.     CROWN ROYAL® whisky is sold throughout the United States in a wide variety of trade channels, including bars, clubs, restaurants, liquor stores, mass retail outlets (e.g., Wal-Mart and Target), club retail outlets (e.g., Sam's Club and Costco), grocery stores, and other retail locations, as well as at sporting events, concerts, and other entertainment events.  Diageo

6

exercises great care, skill, and diligence in connection with its CROWN ROYAL® whisky and other products and maintains exacting standards of the highest quality.

17.    CROWN ROYAL® whisky has been extensively advertised and promoted in various media in the United States, including in television commercials and print publications. Diageo also maintains an extensive internet presence for CROWN ROYAL® whisky, and in addition to the website located at <crownroyal.com>, Diageo prominently uses Twitter, YouTube, Facebook, and other social media resources to promote the CROWN ROYAL® brand. Diageo's advertising and promotional expenditures on behalf of CROWN ROYAL® whisky are substantial, and for the three-year period that ended on December 31, 2012 were in excess of $100 million.

18.    In addition to the CROWN ROYAL® mark, advertising and promotional materials for CROWN ROYAL® whisky commonly emphasize and prominently depict the Purple Bag that is used for the whisky's packaging, and that has been a focal point of CROWN ROYAL® advertising and promotional activities.  Diageo's official brand history highlights the role the Purple Bag has played – along with the particular connection of CROWN ROYAL® to Texas:

### The History of the Purple Bag

> To celebrate the maiden visit to Canada of King George VI and Queen Elizabeth of England, Seagram's Chairman Samuel Bronfman developed a unique whisky of refined smoothness for the occasion. But he needed something to present this crown jewel in.  Something regal.  Something luxurious.  It was decided this special whisky would be housed in a velvet bag of purple -- since ancient times the color reserved for royalty -- with drawstrings of gold.  From this grand beginning, the fancy purple bag and its perfectly aged contents stayed under wraps in Canada. But as fate would have it with something this exceptional, word was bound to travel. And travel it did.  When enterprising Canadians headed to seek their fortune in the oil rich lands of Texas in the 1960s, they

packed their trusty purple bags for the journey. In no time at all, tales of Crown Royal's smoothness spread like a fine whiskey across the land.  Today, fifty million purple velvet bags are stitched for Crown Royal every year. Each one remains above all a symbol of excellence to those who savor Crown Royal. It's a sign that every glass will taste exactly like the first.  A guarantee that you can tell a whisky by its cover.  And luxurious proof that good things come in velvety packages.

See http://www.crownroyal.com/ society-of-the-crown-the-bag.

19.    The Purple Bag mark has been featured in CROWN ROYAL® advertising campaigns since at least 1964; for example, the Purple Bag mark is currently widely included in CROWN ROYAL® displays at "off-premise" retail locations (including liquor stores, grocery stores, and mass retail outlets).  Diageo regularly offers custom Purple Bag embroidery at off-premise events and over the internet, enabling consumers to have their Purple Bags embroidered with their names, initials, and other personal indicia.

20.    Beyond Diageo's advertising, CROWN ROYAL® whisky has also historically received an enormous amount of third-party media attention, and such media attention has focused not only on the CROWN ROYAL® mark, but the Purple Bag packaging as well.  This media attention has helped make CROWN ROYAL® whisky and the Purple Bag memorable and distinctive in the minds of the consuming public.

21.    Diageo uses velvety bags in connection with the CROWN ROYAL® line extensions.  CROWN ROYAL® Maple comes in a brown bag; CROWN ROYAL BLACK® in a black bag; CROWN ROYAL XR® in a blue bag; and CROWN ROYAL RESERVE in a gold bag.  Consumers recognize these bags in their own right, and also identify them strongly with the CROWN ROYAL® line of products.  Many collect limited-edition or line-extension bags to complement their Purple Bags.

**B.      Diageo's Distinctive and Famous CROWN ROYAL and Purple Bag Trademarks**

22.      The CROWN ROYAL® and Purple Bag trademarks are inherently distinctive

marks.

23.      Diageo is the owner of many federal trademark registrations for the CROWN

ROYAL® trademark, including the following (arranged chronologically by first use date; in this

Complaint, these trademarks are encompassed by the phrase "CROWN ROYAL® trademark"):

| Mark | First Use Date | Reg. No. | Reg. Date | Covered Goods |
|---|---|---|---|---|
| CROWN ROYAL (Stylized)® | Jan. 11, 1954 | 635,313 | Oct. 2, 1956 | Alcoholic liquors-namely, whiskey |
| CROWN ROYAL and Design® | Jan. 11, 1954 | 2,094,877 | Sept. 9, 1997 | Whisky |
| CROWN ROYAL® | 1964 | 2,851,028 | June 8, 2004 | Alcoholic beverages namely whiskey |
| CROWN ROYAL and Design® | 1964 | 3,020,295 | Nov. 29, 2005 | Alcoholic beverages, namely, distilled spirits |
| CROWN ROYAL® | 1989 | 3,096,261 | May 23, 2006 | Articles of clothing, namely, jackets, caps, pullovers, shirts, t-shirts |
| CROWN ROYAL (Stylized)® | 1989 | 3,234,379 | Apr. 24, 2007 | Articles of clothing, namely, jackets, wind resistant jackets, leather jackets, boxer , shirts, golf shirts, polo shirts, knit shirts, tank tops, pants, sleepwear, sweatshirts, t-shirts, caps, baseball caps, visors, bandanas, hats, aprons, footwear, namely, sandals and flip-flops |
| CR CROWN ROYAL SPECIAL RESERVE and Design® | Oct. 1, 1991 | 1,724,742 | Oct. 13, 1992 | Whisky |

| CROWN ROYAL® | Feb. 2005 | 3,703,562 | Oct. 27, 2009 | Articles of clothing, namely, sweatshirts and hats; Financial sponsorship of sporting and cultural events |
|---|---|---|---|---|
| CROWN ROYAL CHAMPION-SHIP RACING® | Feb. 2005 | 3,234,495 | Apr. 24, 2007 | Financial sponsorship of sporting and cultural events |
| CROWN ROYAL XR® | June 30, 2006 | 3,291,893 | Sept. 11, 2007 | Alcoholic beverages, namely, whisky |
| CROWN ROYAL EXTRA XR RARE and Design® | June 30, 2006 | 3,314,727 | Oct. 16, 2007 | Alcoholic beverages, namely, whisky |
| CR CROWN ROYAL SPECIAL RESERVE and Design® | Sept. 2006 | 3,332,468 | Nov. 6, 2007 | Alcoholic beverages, namely, whisky |
| CROWN ROYAL CASK NO. 16 | Sept. 30, 2007 | 3,506,079 | Sept. 23, 2008 | Alcoholic beverages, namely, whisky |
| CROWN ROYAL RESERVE® | Oct. 2008 | 3,596,123 | Mar. 24, 2009 | Distilled spirits |
| CROWN ROYAL RESERVE CROWN ROYAL RESERVE CRR and Design® | Oct. 2008 | 3,596,124 | Mar. 24, 2009 | Alcoholic beverages, namely, whisky |
| CROWN ROYAL BLACK® | Mar. 1, 2010 | 4,023,275 | Sept. 6, 2011 | Alcoholic beverages except beers |

Each of these trademark registrations is valid and subsisting, and several of these trademark registrations have become incontestable pursuant to 15 U.S.C. §1065. Documentation reflecting the trademark registrations and incontestability status are attached as Exhibit 4.

24.     In addition to these trademark registrations for the CROWN ROYAL® mark, Diageo also owns a federal trademark registration for the design of the purple, gold-trimmed drawstring pouch in which CROWN ROYAL® whisky is sold (referred to in this Complaint as the Purple Bag mark):

| Mark | First Use Date | Reg. No. | Reg. Date | Covered Goods |
|------|----------------|----------|-----------|---------------|
|  | Jan. 1, 1964 | 3,137,914 | Sept. 5, 2006 | Alcoholic beverages, namely, spirits |

This Purple Bag trademark registration is valid and subsisting and has become incontestable pursuant to 15 U.S.C. §1065. Documentation reflecting this trademark registration and incontestability status is attached as Exhibit 5.

25.    In addition to its extensive rights based on its CROWN ROYAL® and Purple Bag trademark registrations, Diageo has extensive federal and state common law rights in the CROWN ROYAL® and Purple Bag trademarks based on Diageo's extensive advertising, promotion, and sales of CROWN ROYAL® whisky and other products using these trademarks.

26.    Furthermore, when used in conjunction with each other, the CROWN ROYAL® product, bottle shape, product name, and Purple Bag packaging create a unique, distinctive, widely-recognized, famous, and non-functional trade dress (the "CROWN ROYAL® Trade Dress").

27.    In sum, the CROWN ROYAL® trademark, Purple Bag trademark, and CROWN ROYAL® Trade Dress are strong, famous, inherently distinctive, have achieved secondary meaning, and have come to be exclusively identified with Diageo (or the maker of CROWN ROYAL® whisky). As such, the CROWN ROYAL® and Purple Bag marks have by any measure become famous within the meaning of 15 U.S.C. § 1125(c) and Tex. Bus. & Com. Code Ann. § 16.103(b), and are entitled to the widest scope of protection under federal and state trademark infringement, unfair competition, and anti-dilution laws.

**C.      Defendants' Unauthorized, Infringing, Dilutive, and Unfairly Competitive Activities**

28.      Defendants are well aware of the popularity and fame of Diageo's CROWN ROYAL® whisky, the CROWN ROYAL® trademark, the Purple Bag trademark, the CROWN ROYAL® Trade Dress, and the goodwill represented and symbolized by each.

29.      Nevertheless, with full awareness of that popularity, fame, and goodwill, Defendants have undertaken unfairly and in bad faith to capitalize on the popularity of and demand for CROWN ROYAL® whisky and the marks, trade dress, and indicia associated with that product, and to divert Plaintiff's sales to Defendants through a variety of unlawful activities that infringe and dilute Diageo's CROWN ROYAL® trademark, Purple Bag trademark, and CROWN ROYAL® Trade Dress.

30.      Defendants are prominently using several trademarks, each of which standing alone infringes and dilutes Diageo's famous marks.  For example, Defendants are currently distributing and marketing competing Canadian whiskies under the names Texas CROWN Club, Florida CROWN Club, Tennessee CROWN Club, Arkansas CROWN Club, and South Carolina CROWN Club, and possibly other brands as well.   Each of these brand names emphasizes the distinctive and famous "Crown" term that is closely identified with CROWN ROYAL® whisky – and is substantially and confusingly similar to the CROWN ROYAL® trademark.  Accordingly, the use of each of Defendants' marks standing alone in connection with the advertising and sale of Defendants' Canadian whisky constitutes trademark infringement and dilution.  The consumer confusion and dilution created by Defendants' unlawful use is exacerbated by the facts that Defendants regularly give the word "CROWN" much greater prominence as compared to any other word or mark on Defendants' bottles, that in most cases they depict the word "CROWN" in

a gold script font confusingly similar to the gold script font used by Plaintiff to display its CROWN ROYAL® trademark, and that in some cases Defendants entirely omit the word CLUB.

31.     Defendants' infringing whisky products are already being sold and will likely continue to be sold in the same trade channels and in immediate proximity to Diageo's CROWN ROYAL® whisky.  For example, the following photographs show Diageo's CROWN ROYAL® whisky being sold right next to – and even in the same displays as – Defendants' SOUTH CAROLINA CROWN CLUB whisky (described in a shelf talker as "NEW S.C. CROWN"):

 

Defendants' willful and wanton intent is evidenced by the fact that Defendants themselves posted the following photograph on their SOUTH CAROLINA CROWN Facebook page (which does not use the word "CLUB" in its title) showing their South Carolina CROWN Club whisky

intermixed with CROWN ROYAL® whisky, with the description "Look at that great stack of South Carolina Crown Whisky":



32.     To support their unlawful products, Defendants have embarked on an extremely broad trademark filing scheme to register marks that include "CROWN" as their dominant component.   For example, according to United States Patent and Trademark Office records, Defendant Mexcor owns the following four federal trademark registrations (arranged by registration number):

14

| Mark | Reg. No. | Reg. Date | Covered Goods | Owner |
|------|----------|-----------|---------------|-------|
| TEXAS CROWN CLUB | 3,738,906 | Jan. 19, 2010 | Whiskey Whiskey | Mexcor |
| TEXAS CROWN CLUB and Design | 3,810,851 | June 29, 2010 | Whiskey | Mexcor |
| TEXAS CROWN CLUB and Design | 3,810,852 | June 29, 2010 | Whiskey | Mexcor |
| SOUTHERN CROWN CLUB | 4,269,884 | Jan. 1, 2013 | Whiskey | Mexcor |

33.     Defendants have also filed at least 21 federal trademark applications for word marks (i.e., phrases) that include "CROWN" as their dominant component on an "intent-to-use" basis.  These applications, many of which EJMV has filed very recently since the beginning of February 2013, are the following (arranged by serial/application number; on information and belief, all of these applications remain pending as of the date of this Complaint):

| Mark | Filing Date | Ser. No. | Covered Goods | Owner |
|------|-------------|----------|---------------|-------|
| TENNESSEE CROWN | July 25, 2011 | 85-379607 | Whiskey | Mexcor |
| CALIFORNIA CROWN CLUB | Mar. 5, 2012 | 85-560605 | Whiskey | Mexcor |
| FLORIDA CROWN CLUB | Mar. 5, 2012 | 85-560550 | Whiskey | Mexcor |
| GEORGIA CROWN CLUB | Mar. 5, 2012 | 85-560571 | Whiskey | Mexcor |
| SOUTH CAROLINA CROWN CLUB | Apr. 17, 2012 | 85-600172 | Whiskey | Mexcor |
| AMERICAN CROWN CLUB | Sept. 7, 2012 | 85-723577 | Whisky | Mexcor |
| CROWN CLUB | Sept. 13, 2012 | 85-728849 | Vodka; whisky | Mexcor |
| COLORADO CROWN CLUB | Sept. 21, 2012 | 85-734894 | Whisky | Mexcor |
| LAS VEGAS CROWN CLUB | Oct. 19, 2012 | 85-758727 | Tequila; vodka; whisky | Mexcor |

| DAKOTA CROWN CLUB | Feb. 5, 2013 | 85-841350 | Whisky | EJMV |
|---|---|---|---|---|
| WASHINGTON CROWN CLUB | Feb. 5, 2013 | 85-841343 | Whisky | EJMV |
| NEW ENGLAND CROWN CLUB | Feb. 5, 2013 | 85-841334 | Whisky | EJMV |
| NEW YORK CROWN CLUB | Feb. 5, 2013 | 85-841340 | Whisky | EJMV |
| VIRGINIA CROWN CLUB | Feb. 5, 2013 | 85-841342 | Whisky | EJMV |
| MARYLAND CROWN CLUB | Feb. 5, 2013 | 85-841333 | Whisky | EJMV |
| BIG APPLE CROWN CLUB | Feb. 5, 2013 | 85-841346 | Whisky | EJMV |
| NEW ORLEANS CROWN CLUB | Feb. 5, 2013 | 85-841338 | Whisky | EJMV |
| AMERICAN CROWN CLUB | Feb. 14, 2013 | 85-850555 | Whisky | EJMV |
| LOUISIANA CROWN CLUB | Feb. 18, 2013 | 85-852984 | Whisky | EJMV |
| JERSEY CROWN CLUB | Feb. 18, 2013 | 85-852971 | Whisky | EJMV |
| CHICAGO CROWN CLUB | Feb. 18, 2013 | 85-852970 | Whisky | EJMV |

34.    Each of Defendants' marks listed above standing alone infringes and dilutes (or would infringe or dilute) the CROWN ROYAL® trademark if it is or were used on whisky. Defendants already are using several of these marks in the marketplace, including the TEXAS CROWN CLUB, FLORIDA CROWN CLUB, TENNESSEE CROWN CLUB, ARKANSAS CROWN CLUB, and SOUTH CAROLINA CROWN CLUB marks.

35.    Defendants have also filed at least eleven federal trademark applications for marks that emphasize the word "CROWN" and include a cloth bag designed to incorporate a state flag or other symbol referencing a geographic location included in each of these marks.

These applications, many of which again Defendant EJMV has filed very recently since the beginning of February 2013, are the following (arranged by serial/application number; on information and belief, all of these applications remain pending as of the date of this Complaint):

| Mark | Filing Date | Ser. No. | Covered Goods | Owner |
|---|---|---|---|---|
| TEXAS CROWN CLUB WHISKY and Design  | Sept. 17, 2012 | 85-731118 | Whisky | Mexcor |
| ULTRA PREMIUM AMERICAN CROWN CLUB WHISKY and Design  | Feb. 18, 2013 | 85-852815 | Whisky | EJMV |
| ULTRA PREMIUM ARKANSAS CROWN CLUB WHISKY and Design  | Feb. 18, 2013 | 85-852818 | Whisky | EJMV |

| ULTRA PREMIUM CALIFORNIA CROWN CLUB WHISKY CALIFORNIA REPUBLIC and Design  | Feb. 18, 2013 | 85-852832 | Whisky | EJMV |
|---|---|---|---|---|
| ULTRA PREMIUM COLORADO CROWN CLUB WHISKY C and Design  | Feb. 18, 2013 | 85-852839 | Whisky | EJMV |
| ULTRA PREMIUM FLORIDA CROWN CLUB WHISKY and Design  | Feb. 18, 2013 | 85-852842 | Whisky | EJMV |

| ULTRA PREMIUM SOUTH CAROLINA CROWN CLUB WHISKY and Design | Feb. 18, 2013 | 85-852846 | Whisky | EJMV |
|---|---|---|---|---|
| ULTRA PREMIUM TENNESSEE CROWN CLUB WHISKY and Design | Feb. 18, 2013 | 85-852854 | Whisky | EJMV |
| WHISKY ULTRA PREMIUM LAS VEGAS CROWN CLUB A A A A and Design | Feb. 18, 2013 | 85-852857 | Whisky | EJMV |

| ULTRA PREMIUM SOUTHERN CROWN CLUB WHISKY and Design | Feb. 18, 2013 | 85-852969 | Whisky | EJMV |
|---|---|---|---|---|
| ULTRA PREMIUM GEORGIA CROWN CLUB WHISKY and Design | Feb. 25, 2013 | 85-859648 | Whisky | EJMV |

36.     Each of Defendants' bag designs is substantially and confusingly similar to the Purple Bag mark used in connection with CROWN ROYAL® whisky, and infringes and dilutes Diageo's rights in the Purple Bag mark.  Defendants' bags immediately evoke Plaintiff's famous Purple Bag and will cause consumers to believe that Defendants' whisky products originate with or are regional variations or line extensions from the maker of CROWN ROYAL® whisky.  This is especially likely in light of Diageo's regular use of bags in other colors for its CROWN ROYAL® line extensions.

37.     With a wide universe of available bottle shapes from which to choose, Defendants chose a bottle design similar to the CROWN ROYAL® whisky bottles.  Because both parties' bottles have a short, wide shape and a decorative stopper, when the parties' products are placed in their respective drawstring bags, they are rendered virtually indistinguishable.  Even to the extent the parties' bags or bottles differ in shape or appearance, the overall impression created by Defendants' use of a drawstring bag together with a short, wide bottle and decorative stopper is that Defendants' products are part of the CROWN ROYAL® family of line extensions.

38.     On information and belief, Defendants are deliberately and in bad faith seeking to appropriate Diageo's existing goodwill in, consumer recognition of, and extensive marketing, promotion, and advertising of CROWN ROYAL® whisky, the CROWN ROYAL® mark, the Purple Bag mark, and the CROWN ROYAL® Trade Dress to enhance the sales of Defendants' infringing products.

39.     Needless to say, Diageo has not authorized or licensed Defendants to distribute, market, or sell whisky using Diageo's CROWN ROYAL® mark, Purple Bag mark, CROWN ROYAL® Trade Dress, or any imitations of those marks or dilutive or confusingly similar indicia.

**D.     The Effects of Defendant's Unlawful Activities**

40.     Plaintiff is aware of actual confusion that has occurred in the marketplace as a result of Defendants' infringing products and trademarks, and on information and belief, such actual confusion is continuing.

41.     As a direct and proximate result of Defendants' foregoing actions, Diageo is suffering irreparable injury for which there is no adequate remedy at law, and absent injunctive relief, will continue to suffer irreparable injury for which there is no adequate remedy at law.

42.     On information and belief, Defendants have derived certain direct and indirect benefits and profits from its unlawful distribution, marketing, and sale of its infringing and dilutive products, all at Diageo's economic and reputational expense.  Defendants' foregoing actions have caused and will continue to cause Diageo to suffer damages, including but not limited to lost sales, lost profits, and damaged goodwill.

43.     On information and belief, Defendants' foregoing acts have been willful, wanton, malicious, intentional, and purposeful or in reckless disregard of, or with callous indifference to, Diageo's rights.

44.     Defendants' foregoing acts have occurred in interstate commerce and in a manner affecting interstate commerce.

45.     The activities of Defendants complained of herein have damaged Diageo in an amount that is not yet determined.

**COUNT I**
**FEDERAL TRADEMARK INFRINGEMENT OF THE**
**CROWN ROYAL® TRADEMARK**

46.     Diageo repeats and incorporates by reference the allegations contained in the foregoing paragraphs.

47.     Diageo is the owner of the federally-registered CROWN ROYAL® trademark.

48.     Through Diageo's extensive and exclusive use and promotion, as well as substantial sales, the CROWN ROYAL® trademark, which is inherently distinctive, has garnered widespread public recognition in the United States, and has become well-known and famous among consumers.

49.     Defendants' use and intended use of the CROWN-formative trademarks referenced above, both standing alone and together with Defendants' various "Bag" trademarks,

has caused and is likely to continue causing confusion, deception, and mistake by creating the false and misleading impression that Defendants' whiskies offered in conjunction with these marks are affiliated, connected, or associated with Diageo and CROWN ROYAL® whisky and the Purple Bag mark, or have Diageo's sponsorship, endorsement, or approval, or are regional variations, line extensions, or brand variants of CROWN ROYAL® whisky, or otherwise originate from Diageo, in violation of 15 U.S.C. § 1114.

50.     On information and belief, Defendants' actions demonstrate a willful and bad-faith intent to trade on the goodwill associated with Diageo's CROWN ROYAL® trademark, and to cause confusion, deception, and mistake in the minds of Diageo's customers and potential customers.

**COUNT II**
**FEDERAL TRADEMARK INFRINGEMENT OF THE**
**PURPLE BAG MARK**

51.     Diageo repeats and incorporates by reference the allegations contained in the foregoing paragraphs.

52.     Diageo is the owner of the federally-registered Purple Bag mark.

53.     Through Diageo's extensive and exclusive use and promotion, as well as substantial sales, the Purple Bag mark, which is inherently distinctive, has garnered widespread public recognition in the United States, and has become well-known and famous among consumers.

54.     Defendants' use and intended use of the "Bag" trademarks referenced above, both standing alone and together with Defendants' CROWN-formative trademarks, has caused and is likely to continue causing confusion, deception, and mistake by creating the false and misleading impression that Defendants' whiskies offered in conjunction with these marks are affiliated,

23

connected, or associated with Diageo and CROWN ROYAL® whisky, or have Diageo's sponsorship, endorsement, or approval, or are regional variations, line extensions, or brand variants of CROWN ROYAL® whisky, or otherwise originate from Diageo, in violation of 15 U.S.C. § 1114.

55.     On information and belief, Defendants' actions demonstrate a willful and bad-faith intent to trade on the goodwill associated with Diageo's Purple Bag mark, and to cause confusion, deception, and mistake in the minds of Diageo's customers and potential customers.

<u>**COUNT III**</u>
<u>**FEDERAL TRADE DRESS INFRINGEMENT, UNFAIR COMPETITION, AND FALSE DESIGNATION OF ORIGIN**</u>

56.     Diageo repeats and incorporates by reference the allegations contained in the foregoing paragraphs.

57.     Defendants' use of the CROWN-formative and "Bag" trademarks referenced above, both standing alone and together, constitutes false representation, false description, and false designation of origin of Defendant's products and services in violation of 15 U.S.C. § 1125(a).  Defendant's actions also constitute unfair competition in violation of 15 U.S.C. § 1125(a).

58.     Defendants' use of CROWN-formative and "Bag" trademarks in conjunction with each other, along with other trade dress elements that contribute to the overall look and feel of Defendants' whisky products, emulate and mimic the overall appearance of Diageo's CROWN ROYAL® whisky product and packaging, and are confusingly similar to the CROWN ROYAL® Trade Dress.  Defendants' use thus constitutes trade dress infringement in violation of 15 U.S.C. § 1125(a).

24

59.     Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the public and, additionally, injury to Diageo's goodwill and reputation as symbolized by the CROWN ROYAL® and Purple Bag trademarks and the CROWN ROYAL® Trade Dress.

**COUNT IV**
**FEDERAL TRADEMARK DILUTION**

60.     Diageo repeats and incorporates by reference the allegations contained in the foregoing paragraphs.

61.     Diageo's CROWN ROYAL® and Purple Bag trademarks and CROWN ROYAL® Trade Dress are and have become famous by virtue of, *inter alia*, their strong brand recognition, extent of use, extent of advertising, publicity, and nationwide usage.

62.     Defendants' foregoing willful and bad faith acts dilute and tarnish, and are likely to and will continue to dilute and tarnish, the distinctive qualities of the CROWN ROYAL® and Purple Bag trademarks and CROWN ROYAL® Trade Dress in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). Defendants' acts discussed above all took place after the CROWN ROYAL® and Purple Bag trademarks and CROWN ROYAL® Trade Dress became famous, and  (a) blur and impair these marks' and trade dress's ability to act as distinctive identifiers of source or origin, (b) tarnish the CROWN ROYAL® and Purple Bag trademarks and CROWN ROYAL® Trade Dress and harm their reputation, and (c) circumvent Diageo's efforts to maintain the integrity of the products with which these trademarks are associated.

**COUNT V**
**CANCELLATION OF MEXCOR'S REGISTRATIONS**
**UNDER 15 U.S.C. § 1064**

63.     Diageo repeats and incorporates by reference the allegations contained in the foregoing paragraphs.

64.     Diageo will be damaged by continued registration of Defendant Mexcor's continued registration of the trademarks TEXAS CROWN CLUB (Reg. No. 3,738,906), TEXAS CROWN CLUB and Design (Reg. No. 3,810,851), TEXAS CROWN CLUB and Design (Reg. No. 3,810,852), and SOUTHERN CROWN CLUB (Reg. No. 4,269,884) on the federal principal register.

65.     Therefore, in accordance with Section 14 of the Lanham Act (15 U.S.C. § 1064), Reg Nos. 3,738,906; 3,810,851; 3,810,852; and 4,269,884 should be cancelled.

**COUNT VI**
**TRADEMARK DILUTION UNDER TEX. BUS. & COM. CODE ANN. § 16.103**

66.     Diageo repeats and incorporates by reference the allegations contained in the foregoing paragraphs.

67.     Diageo's CROWN ROYAL® and Purple Bag trademarks and CROWN ROYAL® Trade Dress are and have become famous and widely recognized by the public throughout the state of Texas by virtue of, *inter alia*, strong brand recognition, extent of use, extent of advertising, publicity, and nationwide and statewide usage.

68.     Defendants' false and unauthorized imitation of Diageo's CROWN ROYAL® and Purple Bag trademarks and CROWN ROYAL® Trade Dress, which on information and belief has been willful, dilutes and is likely to dilute the distinctive quality of Diageo's CROWN ROYAL® and Purple Bag trademarks and CROWN ROYAL®  Trade Dress, by eroding the public's exclusive identification of the marks and trade dress with Diageo, tarnishing the positive associations of these marks and trade dress, and lessening the capacity of these marks and trade dress to identify and distinguish Diageo's goods.

<u>COUNT VII</u>
<u>COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION</u>

69.     Diageo repeats and incorporates by reference the allegations contained in the foregoing paragraphs.

70.     Defendants are promoting and selling products using trademarks and trade dress that are likely to cause consumer confusion, mistake, and deception.

71.     On information and belief, Defendants' conduct is gross, wanton, and willful, and is intended to reap the benefit of Diageo's goodwill in the CROWN ROYAL® and Purple Bag trademarks and CROWN ROYAL® Trade Dress, and constitutes trademark infringement and unfair competition under Texas common law.

72.     Diageo is therefore entitled to, among other remedies, injunctive relief, an award of its actual damages, an accounting of any profits enjoyed by Defendants as a result of its unlawful conduct, and punitive damages.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Diageo prays that Judgment be entered against Defendants as follows:

1.     That Defendants, their partners, agents, employees, and all persons in active concert or participation with Defendants, be permanently enjoined and restrained from:

a.     Using the CROWN-formative and "Bag" trademarks referenced above, including but not limited to the trademarks set out in the following registrations and applications: TEXAS CROWN CLUB (Reg. No. 3,738,906), TEXAS CROWN CLUB and Design (Reg. No. 3,810,851), TEXAS CROWN CLUB and Design (Reg. No. 3,810,852), SOUTHERN CROWN CLUB (Reg. No. 4,269,884), TENNESSEE CROWN (Ser. No. 85-379607), FLORIDA CROWN CLUB (Ser. No. 85-560550), SOUTH CAROLINA CROWN CLUB (Ser. No. 85-600172); TEXAS CROWN CLUB WHISKY and Design (Ser. No. 85-731118), ULTRA

PREMIUM ARKANSAS CROWN CLUB WHISKY and Design (Ser. No. 85-852818), ULTRA PREMIUM FLORIDA CROWN CLUB WHISKY and Design (Ser. No. 85-852842), ULTRA PREMIUM SOUTH CAROLINA CROWN CLUB WHISKY and Design (Ser. No. 85-852846), and ULTRA PREMIUM TENNESSEE CROWN CLUB WHISKY and Design (Ser. No. 85-852854

   b. Using the CROWN ROYAL® and Purple Bag trademarks and CROWN ROYAL® Trade Dress and any other mark, design, configuration, or trade dress that incorporates the "CROWN" term (including but not limited to "CROWN ROYAL"), or that is confusingly similar to Diageo's CROWN ROYAL® or Purple Bag marks (including but not limited to Defendants' CROWN and "Bag" marks), or that incorporates the CROWN ROYAL® Trade Dress, on or in connection with their whiskies or other products and services discussed herein;

   c. Using any false designation of origin or false description, or representing or suggesting directly or by implication that Defendants or their whisky products are affiliated with, associated with, authorized by, or otherwise connected to Diageo; that Defendants are authorized by Diageo to use Diageo's CROWN ROYAL® and Purple Bag marks, the CROWN ROYAL® Trade Dress, or Defendants' marks referenced above; or that Defendants' whisky products originate with Diageo or are brand variants or line extensions of CROWN ROYAL® whisky;

   d. Using any simulation, reproduction, copy, or colorable imitation of Diageo's CROWN ROYAL® mark, Purple Bag mark, or CROWN ROYAL® trade dress, including but not limited to Defendants' marks referenced above, in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation, or distribution of any product or service in such a manner as to relate or connect, or tend to relate

28

or connect, such product in any way to Diageo or any products or service sold, manufactured, sponsored, or approved by or connected with Diageo, including but not limited to CROWN ROYAL® whisky;

      e.    Tarnishing, harming the reputation of, blurring, impairing the distinctiveness of, or otherwise diluting the CROWN ROYAL® or Purple Bag marks or CROWN ROYAL® Trade Dress, including but not limited to through the use and dissemination of Defendants' marks referenced above;

      f.    Engaging in any other activity constituting unfair competition with Diageo, or constituting infringement of Diageo's CROWN ROYAL® or Purple Bag marks or CROWN ROYAL® Trade Dress; or

      g.    Instructing, assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (f) above.

    2.    That Defendants be required to recall from the trade and all distribution channels any and all products, packaging, advertising, and promotional materials bearing the infringing and diluting marks and trade dresses;

    3.    That Defendants be required to undertake corrective advertising to remedy the damage and injury to Diageo caused by Defendants' unlawful, infringing, and dilutive trademarks and trade dresses.

    4.    That Defendants be required to deliver to the Court for destruction, or show proof of destruction of, any and all products, packaging, advertising, and promotional materials in Defendants' possession or control that use the CROWN ROYAL® or Purple Bag marks or CROWN ROYAL® Trade Dress, or any other mark, design, or configuration that is confusingly

similar to or dilutes Diageo's CROWN ROYAL® or Purple Bag marks or CROWN ROYAL® Trade Dress.

4.      That Defendants be directed to file with the Court and serve on Diageo, within thirty (30) days after entry of a final injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

5.      That an accounting be ordered and judgment be rendered against Defendants for all profits received from the sale of products and services directly or indirectly in connection with, or advertised or promoted in any manner, utilizing the infringing, diluting, and confusingly similar imitations of the CROWN ROYAL® or Purple Bag marks or CROWN ROYAL® Trade Dress.

6.      That Diageo recover its actual damages.

7.      That the award of profits resulting from Defendants' Lanham Act violations, including dilution, infringement, unfair competition, and false designation of origin, be trebled.

8.      That the award of profits resulting from Defendants' violation of Tex. Bus. & Com. Code Ann. § 16.103 be trebled.

9.      That Diageo be awarded interest, including pre-judgment interest, on the foregoing sums.

10.      Finding this to be an "exceptional case" within the meaning of the Lanham Act and directing that Defendants pay Diageo the costs of this action and Diageo's reasonable attorneys' fees and expenses.

11.      That Diageo be awarded punitive damages to deter any future violations of Diageo's rights.

30

12.     That, pursuant to 15 U.S.C. § 1119, the Court make a determination and certify an order to the Director of the United States Patent & Trademark Office:

a.      That Defendant's U.S. trademark registrations that incorporate the term CROWN be cancelled; and

b.      That Defendant's pending U.S. trademark applications discussed above, all of which incorporate "CROWN" and/or a "Bag" design be denied registration.

13.     That, pursuant to 15 U.S.C. § 1116, the Court issue a permanent injunction enjoining Defendants from pursuing their current applications for federal registration of the marks cited above that incorporate "CROWN" and/or a "Bag" design, or any future applications for federal registration of CROWN-formative or "Bag" marks in connection with whisky, or the other products and services discussed herein.

14.     That the Court direct such other action as the Court may deem just and proper to prevent the trade and public from deriving the mistaken impression that any products or services offered, advertised, or promoted by or on behalf of Defendants are authorized by Diageo or related in any way to Diageo's products or services.

15.     That Diageo have such other and further relief as the Court may deem just and proper.

31

DATED:        March 26, 2013

                                                    Respectfully Submitted,

                                                    FULBRIGHT & JAWORSKI L.L.P.

                                                      /s/ Linda L. Addison
                                                    Linda L. Addison
                                                    State Bar No. 00903700
                                                    Federal I.D. No. 3430
                                                    Fulbright Tower
                                                    1301 McKinney, Suite 5100
                                                    Houston, Texas  77010-3095
                                                    Telephone:  713.651.5151
                                                    Telecopier:  713.651.5246
                                                    E-Mail:  laddison@fulbright.com

                                                    ATTORNEY IN CHARGE FOR PLAINTIFF
                                                    DIAGEO NORTH AMERICA, INC.

OF COUNSEL:

PROSKAUER ROSE L.L.P.
Brendan J. O'Rourke*
Adam D. Siegartel*
Celia R. Muller*
Eleven Times Square
New York, NY 10036
Telephone:  212.969.3000
Telecopier:  212.969.2900

*Pro hac vice to be filed

FULBRIGHT & JAWORSKI L.L.P.
Melanie B. Rother
State Bar No. 24041826
Federal I.D. No. 39164
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
Telephone:  713.651.5151
Telecopier:  713.651.5246