# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS

DIAGEO NORTH AMERICA, INC.,

    Plaintiff and Counterdefendant,

        v.

MEXCOR, INC. and
EJMV INVESTMENTS, LLC,

    Defendants and Counterclaimants.

Case No. 4:13-cv-856 (DH) (SWS)

**JURY DEMANDED**

## DIAGEO NORTH AMERICA, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON TRADEMARK INFRINGEMENT AND UNFAIR COMPETITITON CLAIMS

Brendan J. O'Rourke*
Adam D. Siegartel*
Benjamin M. Rattner*
Lee M. Popkin*
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Tel: 212.969.3000
Fax: 212.969.2900
*Admitted *pro hac vice*

Linda L. Addison
Melanie B. Rother
FULBRIGHT & JAWORSKI LLP
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Tel: 713.651.5151
Fax: 713.651.5246

*Attorneys for Diageo
North America, Inc.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................1

COUNTERSTATEMENT OF FACTS ........................................................3

ARGUMENT............................................................................................8

1.      **Standards** ...............................................................................8

    a.      Summary Judgment ...............................................8

    b.      Trademark Infringement & Unfair Competition ................8

2.      **Mexcor Has Failed To Establish That Diageo's Trademarks Are Not Protectable** ....................................................... 8

    a.      Functionality Defined..........................................9

    b.      The Court Already Rejected The Premise Underlying Mexcor's Functionality Argument .......................... 10

    c.      Consumers' Reuse Of The Purple Bag® Does Not Make It Functional ............................................... 11

    d.      Even If The Purple Bag® Creates A Marketing Advantage, That Does Not Make It Functional.................................. 13

    e.      Mexcor's Case Law Regarding Functionality Is Inapposite 15

3.      **Mexcor Fails To Show There Is No Likelihood Of Confusion** 16

    a.      Third Party Use Of The Word, "Crown" Has Not Meaningfully Weakened Diageo's CROWN-Formative Marks.................................................... 17

      i.      None Of The Third Party Products Mexcor References Weaken Diageo's CROWN-Formative Marks ................ 17

      ii.      Mexcor's Case Law Is Inapposite ..................... 19

**b.**      **Mexcor Fails To Establish That Limited Use of Bags By Third Parties Has Weakened the Purple Bag® Mark** ....... 20

**c.**      **Mexcor Fails To Demonstrate That Its [State] CROWN Club Marks Are Materially Dissimilar From Diageo's Marks** ................................................................. 24

    **i.**      **"Crown" Is The Most Dominant Feature Of Mexcor's [State] CROWN Club Marks** ............................................. 24

    **ii.**     **Consumers Focus On The Word "CROWN," Underscoring Its Prominence** ............................................. 25

    **iii.**    **The Federal Courts Have Jurisdiction To Decide Trademark Infringement, Not USPTO Trademark Examiners** ................................................................. 26

    **iv.**     **Mexcor's [State] CROWN Club Bags Are Highly Similar To The Purple Bag® Mark** ................................................. 28

**d.**      **Mexcor Fails To Overcome Diageo's Overwhelming And Undisputed Evidence Of Actual Confusion** ......................... 29

**CONCLUSION** ................................................................. 33

**CERTIFICATE OF SERVICE** .......................................................... 34

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Home Prods. Co. v. Barr Labs., Inc.,*
  656 F. Supp. 1058 (D.N.J.),
  *aff'd*, 834 F.2d 368 (3d Cir. 1987) .................................................... 29

*Am. Online, Inc. v. AT&T Corp.,*
  243 F.3d 812 (4th Cir. 2001) .............................................. 15, 26

*Amazing Spaces, Inc. v. Metro Mini Storage,*
  608 F.3d 225 (5th Cir. 2010) .............................................. 10

*Armco, Inc. v. Armco Burglar Alarm Co.,*
  693 F.2d 1155 (5th Cir. 1982) .......................................... 31

*B&B Hardware, Inc. v. Hargis Indus., Inc.,*
  716 F.3d 1020 (8th Cir. 2013),
  *petition for cert. filed*, 134 S. Ct. 982 (2014) ................................. 27-28

*Bd. of Supervisors for La. State Univ. Agric. & Mech. College v. Smack Apparel Co.,*
  550 F.3d 465 (5th Cir. 2008) .................................................... passim

*Conversive, Inc. v. Conversagent, Inc.,*
  433 F. Supp. 2d 1079 (C.D. Cal. 2006) ...................................... 31-32

*Duluth News-Tribune, a Div. of Nw. Publ'ns., Inc. v. Mesabi Publ'g Co.,*
  84 F.3d 1093 (8th Cir. 1996) .............................................. 31

*Elvis Presley Enters. v. Capece,*
  141 F.3d 188 (5th Cir. 1998) .............................................. 30

*End Prod. Results, LLC v. Dental USA, Inc.,*
  No. 12-11546, 2014 WL 897363 (E.D. Mich. Mar. 6, 2014) ........................... 26

*Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.,*
  626 F.2d 193 (1st Cir. 1980) .............................................. 16

*Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.,*
  No. 4:12-CV-74, 2013 WL 74605 (E.D. Tex. Jan. 4, 2013) .................................9

iv

*Fun-Damental Too v. Gemmy Indus. Corp.*,
    111 F.3d 993 (2d Cir. 1997) ........................................................ 12, 13

*Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*,
    703 F. Supp. 2d 671 (W.D. Ky. 2010),
    *aff'd,* 679 F.3d 410 (6th Cir. 2012) .............................................. 14

*Natural Polymer Int'l Corp. v. S&M Nutec, L.L.C.*,
    No. Civ. A. 3:03-CV-0461-P, 2004 WL 912568 (N.D. Tex. Apr. 27,
    2004) .......................................................................................... 9, 11

*Pebble Beach Co. v. Tour 18 I*,
    155 F.3d 526 (5th Cir. 1998) ....................................................... 13

*Poly-Am. L.P. v. Stego Indus., LLC*,
    3:08-CV-2224-G, 2011 U.S. Dist. LEXIS 82647 (N.D. Tex. July 27,
    2011),
    *aff'd*, 482 F. App'x 958 (5th Cir. 2012) ......................................... 10

*RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*,
    655 F. Supp. 2d 679 (S.D. Tex. 2009) .......................................... 8, 30

*Sun Banks of Florida, Inc. v. Sun Federal Savings and Loan Association*,
    651 F.2d 311 (5th Cir. 1981) ....................................................... 19, 20

*Tex. Tech. Univ. v. Spiegelberg*,
    461 F. Supp. 2d 510 (N.D. Tex. 2006) ......................................... 24, 28

*Traffix Devices, Inc. v. Mktg. Displays, Inc.*,
    532 U.S. 23 (2001) ...................................................................... 9

*Trustees of Columbia University v. Columbia/HCA Healthcare Corp.*,
    964 F. Supp. 733 (S.D.N.Y. 1997) ............................................... 20

*Vuitton et Fils S.A. v. J. Young Enters., Inc.*,
    644 F.2d 769 (9th Cir. 1981) ....................................................... 14

*Who Dat Yat Chat, LLC v. Who Dat, Inc.*,
    Nos. Civ. A. 10-1333, 10-2296, 2012 WL 1118602 (E.D. La. Apr. 3,
    2012) .......................................................................................... 14

**STATUTES**

15 U.S.C. §§ 1114-1115 ................................................................. 10

15 U.S.C. § 1125(a)(3) ................................................................. 10

**OTHER AUTHORITIES**

1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR
    COMPETITION § 7:70 (4th ed. 2014) ..................................................9

FED. R. CIV. P. 56(a) ................................................................8

Plaintiff Diageo North America, Inc. ("Diageo") respectfully submits this memorandum in opposition to the Motion by Mexcor, Inc. and EJMV Investments, LLC (collectively, "Mexcor") for Summary Judgment on Trademark Infringement and Unfair Competition (the "Motion").

## PRELIMINARY STATEMENT

In this case, on the claims of trademark infringement and unfair competition, Diageo is required to show ownership of a valid trademark and a likelihood of consumer confusion. Diageo owns "incontestable" federal trademark registrations for both the CROWN ROYAL® mark and the Purple Bag® trademark. Thus, the presumption of Diageo's ownership of those marks is "conclusive." Due to the long and extensive use, and the extraordinary levels of advertising, promotion, and sales of products covered by the marks, they are not only protectable, they are exceedingly strong, entitling Diageo to the widest scope of protection.

In turn, likelihood of confusion is determined by a balancing of the Fifth Circuit's well-established "digits of confusion." Mexcor has failed to address, much less even mention, most of the "digits of confusion:" namely, (i) the similarity of the parties' products; (ii) the identity of the retail outlets and purchasers; (iii) the identity of the advertising media used; (iv) the defendant's intent; and (v) the degree of care exercised by potential consumers. All of these

factors weigh overwhelmingly in Diageo's favor, yet they are not even mentioned by Mexcor.

Instead, Mexcor has two basic arguments: (i) that Diageo's marks have been weakened through third party use of similar marks; and (ii) that cloth bags for alcoholic products are "functional." The third party use issue goes merely to the overall relative strength of Diageo's marks, not their protectibility, and, as shown below, Mexcor is simply wrong on the issue of functionality. First, Mexcor did not raise functionality as an affirmative defense, nor did it raise functionality in its counterclaims, despite seeking to cancel Diageo's Purple Bag® mark on grounds of abandonment. Second, rather than discuss the supposed functionality of a purple bag with the word "crown" emblazoned on it, Mexcor obsesses about cloth/velvet bags generally, which are not at issue in this case. Third, Mexcor is simply wrong on the law of functionality. Specifically, Mexcor is wrong when it argues that Diageo bears the burden of proving that its trade dress is non-functional, and it is wrong in applying the facts of this case to the legal definition of functionality. A mark may only be found functional when it is "essential to the use" of the products or "affects the cost or quality" of the product. The CROWN ROYAL® Purple Bag® trademark is not essential to consumers' consumption of the Canadian whisky, nor does it help lower the costs of the whisky or make the

whisky taste better.  It is clear, therefore, that the CROWN ROYAL® Purple

Bag® trademark is **not** functional.

While it is telling that Mexcor fails to mention many of the Fifth Circuit's

digits of confusion, Mexcor cannot overcome the overwhelming evidence of the

one "digit" it did attempt to address directly – actual confusion.  Indeed, as shown

in Diageo's Motion for Summary Judgment, the degree and extent of actual

consumer confusion in this case is overwhelming and undisputed, entitling Diageo

and not Mexcor to summary judgment.

## COUNTERSTATEMENT OF FACTS

Diageo respectfully refers the Court to its Motion for Summary Judgment

("Diageo MSJ") (Dkt. No. 88), for a full statement of the facts.  Nonetheless,

Diageo will address facts that Mexcor mischaracterizes or omits from its Motion.

Mexcor concedes, as it must, that Diageo owns valid, incontestable

registrations for the CROWN ROYAL® marks.  Mexcor Motion at 1.  It also

acknowledges that Diageo owns an incontestable registration for the Purple Bag®

that has enclosed nearly every bottle of Crown Royal® Deluxe sold since its

introduction in 1964.  Mexcor Motion at 1, Exhibits 1, 1A.  Registering the Purple

Bag® mark required the USPTO to find that it is not functional.  *See* Exhibits 1,

1A.

3

Given this decades-long use of the Purple Bag® mark, it is unsurprising that the Purple Bag® has achieved a high level of secondary meaning. *See* Exhibits 2, 2A. ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

Mexcor does not dispute that the Poret survey shows secondary meaning for the Purple Bag® mark. Instead, it takes the Poret survey's results at face value and argues that ████████ of respondents who associated the control bag in the survey with Crown Royal® whisky indicates "*de facto* secondary meaning." Thus, Mexcor admits that the Purple Bag® has achieved secondary meaning.[1] *See* Mexcor Motion at 13, 24.

However, Mexcor does not acknowledge many facts concerning (i) the evolution of its [State] CROWN Club line of whiskies and (ii) actual confusion. Mexcor entered the Canadian whisky market with its product, Texas CROWN Club, in 2008. *See* Exhibit 4, and Exhibit 26 (Gutierrez Tr. 81:14-82:14). The label prominently featured the word "crown" by making it the largest word on that

---

[1] ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████

label. ████████████████████████████████████

████████████████████████████████████████

In 2009, Mexcor made very limited sales of Texas CROWN Club in a bag. Exhibit 6 (Morales Tr. 10:18-24). During this period, Mexcor was "testing the market" and only produced "hundreds [of bags] at a time." *See* Exhibit 6 (Morales Tr. 11:12-12:1). Importantly, this initial Texas CROWN bag did not contain the word mark "CROWN." Exhibit 6 (Morales Tr. 16:6-8). Rather, the bag consisted only of the Texas flag design. *Id.* (Morales Tr. 15:12-16:11); *see also* Mexcor Exhibit B at 4. ████████████████████████████████

████████████████████████████████████████

████████████████████████████████ It was not until late 2011 that Mexcor first began to sell the Texas CROWN Club product in bags with the flag pattern and the name Texas CROWN Club. Exhibit 6 (Morales Tr. 78:20-24).

Then in 2012, Mexcor began to launch a wave of additional state-themed CROWN Club products. In 2012, Mexcor introduced Arkansas CROWN Club, Florida CROWN Club, Tennessee CROWN Club, and South Carolina CROWN Club. *Id.* at 58:19-22. In 2013, Mexcor launched California CROWN Club, Colorado CROWN Club, and Southern CROWN Club. *Id.* at 59:1-5. These new products represented a vast expansion of the geographic presence of the [State] CROWN Club products. Further, the packaging of these new [State] CROWN

Club products is even more similar to the famous CROWN ROYAL® and Purple Bag® marks because all of the packaging displays the term "CROWN" in a gold cursive font nearly identical to the font, style, and gold color used for the term CROWN on the Crown Royal® whisky bag and box. *Id.* at 117:13-20. ■

█████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████. This design, which appears on both Texas CROWN Club and the wave of additional [State] CROWN Club whiskies Mexcor launched, makes CROWN appear as either a standalone mark or a composite mark with the name of the particular state, *e.g.*, Tennessee CROWN, South Carolina CROWN, etc. Thus, it is hardly surprising that at retail, store owners and consumers often refer to Mexcor's products without any reference to the word "Club," *e.g.*, "CROWN" standing alone, or "Carolina CROWN." Exhibit 10 (Josey Tr. 16:9-17:18).

The clear emphasis Mexcor places on the word CROWN has contributed to actual confusion in the marketplace. For example, Mexcor's administrator of its Facebook page for Texas CROWN Club, Jose Coira, knows of more than five instances of actual confusion. Exhibit 11 (Coira Tr. 13:1-7; 13:23-14:3; 30:14-31:22 ). In fact, Mr. Coira himself became confused when testifying about

6

consumers who simply referred to "Crown," which he acknowledged is common shorthand for Crown Royal® and now also for Texas CROWN. *See* Exhibit 11 (Coira Tr. 32:11-34:22) and Exhibit 12.

This actual confusion supplements the overwhelming evidence of actual confusion proffered as part of the Diageo MSJ.

Moreover, survey evidence from Dr. Isaacson's controlled, double blind, "Eveready" format survey establishes a significant likelihood of confusion. *See* Exhibits 13, 13A. Mexcor improperly attempts to wield the Poret survey, which was conducted for a different purpose, against the Isaacson survey.

However, the Poret survey does not undermine Dr. Isaacson's findings at all.

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████ Thus, subtracting the Poret survey's control results from Dr. Isaacson's net confusion figures yields flawed results, and Mexcor has proffered no viable explanation for extrapolating between the two surveys. Nor does Mexcor proffer any survey of its own.

**ARGUMENT**

## 1. <u>Standards</u>

### a.   **Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

### b.   **Trademark Infringement & Unfair Competition**

Proving trademark infringement and unfair competition under the Lanham Act and common law requires the plaintiff to prove: (i) ownership of a legally protectable mark; and (ii) a likelihood of confusion. *Bd. of Supervisors for La. State Univ. Agric. & Mech. College v. Smack Apparel Co.,* 550 F.3d 465, 474 (5th Cir. 2008); *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 697 (S.D. Tex. 2009). As explained in detail below, Mexcor has failed to establish that Diageo's CROWN-formative and Purple Bag® marks are not entitled to protection. Moreover, Mexcor has not disproved (nor can it) the evidence of a likelihood of confusion including the overwhelming evidence of actual confusion occurring in the marketplace. *See* Diageo MSJ (Dkt. No. 88).

## 2. <u>Mexcor Has Failed To Establish That Diageo's Trademarks Are Not Protectable</u>

Mexcor fails to establish that Diageo's CROWN ROYAL® and Purple Bag® marks are not entitled to protection. Indeed, Mexcor admits that Diageo

8

owns federal trademark registrations for the CROWN ROYAL® and Purple Bag®

marks. *See* Mexcor Motion at 1. Instead, Mexcor focuses on the Purple Bag®

mark, arguing that it is functional and therefore not entitled to protection.

### a.  Functionality Defined

Generally, "a product feature is functional, and cannot serve as a trademark,

if it is essential to the use or purpose of the article or if it affects the cost or quality

of the article." *Traffix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001)

(internal quotations and citation omitted).  If a product feature makes the article

less expensive to produce or materially increases the quality of the product, courts

become concerned that extending a trademark monopoly over such a feature could

harm competition. *See Natural Polymer Int'l Corp. v. S&M Nutec, L.L.C.*, No.

Civ. A 3:03-CV-0461-P, 2004 WL 912568, at *3 (N.D. Tex. Apr. 27, 2004).

There is no such concern here.  Indeed, the Fifth Circuit recognizes (i) utilitarian

functionality, and (ii) functionality derived from a legitimate need to compete.

*Smack Apparel Co.*, 550 F.3d at 488.  Functionality is a question of fact.  *Frito-Lay*

*N. Am., Inc. v. Medallion Foods, Inc.*, No. 4:12-CV-74, 2013 WL 74605, at *2

(E.D. Tex. Jan. 4, 2013); 1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS

AND UNFAIR COMPETITION § 7:70 (4th ed. 2014).  Upon observing the Purple Bag®

mark, the Court can readily find that it is not functional, because it plainly is not

"essential" to the use or purpose of Canadian whisky, nor does it affect the cost or

quality of the whisky.  If anything, it makes the package more expensive, not less expensive.

Proof of registration of a mark is prima facie evidence that the mark is valid and enforceable.[2]  15 U.S.C. §§ 1114-1115.  *See Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010).  A registrant need not prove non-functionality of its marks unless the party seeking to cancel the mark has rebutted the presumption of validity.  *See Poly-Am. L.P. v. Stego Indus., LLC*, 3:08-CV-2224-G, 2011 U.S. Dist. LEXIS 82647, at *19 (N.D. Tex. July 27, 2011), *aff'd*, 482 F. App'x 958 (5th Cir. 2012).  As explained below, Mexcor has completely failed to rebut the presumption of validity, and, in any event, the Purple Bag® mark is non-functional.

### b.    The Court Already Rejected The Premise Underlying Mexcor's Functionality Argument

All of Mexcor's arguments concerning functionality[3] suffer from a common flaw:  Mexcor's fixation on cloth bags generally rather than the Purple Bag®.  But this case is not about all cloth/velvet bags.  It is about, *inter alia*, Mexcor's cloth drawstring bags that prominently feature the word "crown" on them in a confusingly similar manner to Diageo's Purple Bag® mark.  Indeed, Mexcor

---

[2] Mexcor incorrectly states the burden for proving functionality. 15 U.S.C. § 1125(a)(3) only applies to trade dress "not registered on the principal register." *Id.* Here, Diageo owns an incontestable registration for the Purple Bag® mark. Exhibits 1,1A. Accordingly, this statutory provision is inapplicable.
[3] It merits emphasizing that Mexcor never pleaded functionality as an affirmative defense and did not plead functionality as a basis for cancelling the Purple Bag® mark. *See* Exhibit 14.

already attempted to shoehorn into this litigation cloth bags that do not have the word "CROWN" on them in its motion for leave to amend the answer. Dkt. No. 58. But the court denied Mexcor's motion. Dkt. No. 73. Thus, functionality of cloth bags, per se, is not relevant and not covered by this case. And Mexcor has presented no evidence that because the Purple Bag® mark has gold stitching, gold drawstrings, is a certain shape, and features the word "Crown," it is functional.

### c.   Consumers' Reuse Of The Purple Bag® Does Not Make It Functional

Mexcor attempts to argue that because consumers can reuse the Purple Bag®, it serves a utilitarian purpose and is functional. Under utilitarian functionality, "if a product feature is the reason the device works, then the feature is functional." *Natural Polymer Int'l Corp. v. S&M Nutec, L.L.C.*, No. Civ. A. 3:03-CV-0461-P, 2004 WL 912568, at *2 (N.D. Tex. Apr. 27, 2004) (internal quotations and citation omitted). However, Mexcor does not and cannot argue that the Purple Bag® helps a consumer drink Crown Royal® whisky. Indeed, evidence in the record indicates that the Purple Bag® is not:



.

11

Simply put, the Purple Bag® mark is *not* "the reason the [product] works."
*Id.* It has nothing to do with the use and consumption of the Canadian whisky
product.

████████████████████████████████

███████████████████████████████████

██████████████████████████████████

█████████████████████████████████

████████████████████

Packaging like the Purple Bag® mark is not functional simply because it can
serve useful functions aside from being appealing to consumers. *See Fun-
Damental Too v. Gemmy Indus. Corp.*, 111 F.3d 993, 1002 (2d Cir. 1997) (holding
that toy's packaging was not functional even though it allowed the toys to be
stacked and protected the toys from damage during shipment). Indeed, Diageo is
unaware of any case in which a trademark has been held functional because a
consumer takes the trademarked item and repurposes it. Taking Mexcor's
argument to its logical conclusion means that no unique design of a bag or other
packaging could ever gain trademark or trade dress protection because consumers
could use it to contain something other than the product originally enclosed within
it.[4]

---

[4] Diageo's knowledge of and interaction with consumers who repurpose the Purple Bag® does

Additionally, Mexcor's conduct undercuts its argument. After all, Mexcor filed ten different trademark applications for the design of [State] CROWN Club bags, including its Texas CROWN Club cloth bag. Mexcor Exhibit F. Mexcor would not have done so if it believed that cloth bags were functional and not entitled to protection because consumers can reuse them.

### d.   Even If The Purple Bag® Creates A Marketing Advantage, That Does Not Make It Functional

Mexcor also seems to be asserting that because bags provide "added value" and "connote luxury," they are necessary to compete in the Canadian whisky market. However, "[t]he fact that a trademark is desirable does not, and should not, render it unprotectable." *Smack Apparel*, 550 F.3d at 488 (quotations and citation omitted). Moreover, simply because a design feature contributes to a trademarked product's success does not make it functional. *See Pebble Beach Co. v. Tour 18 I*, 155 F.3d 526, 538 (5th Cir. 1998) (affirming this Court and observing that a definition of functionality based upon "commercial success or marketing effectiveness . . . would allow a second comer to copy the protectable trade dress of a product whenever the product became successful and preferred by consumers"); *see also Fun-Damental Too*, 111 F.3d at 1002 ("Although this particular packaging incorporates effective features for marketing the product, the

---

not compel a different result. *See* Mexcor Exhibits ▪, T. This is because Diageo does not tout any functional features of the Purple Bag® as related to the drinking of Crown Royal® whisky.

defendants failed to persuade the district court that it is essential to effective competition in the novelty toy market.").

It is thus plain that the "added value" or consumer perception of luxury that the Purple Bag® supposedly creates is not functional. *Cf. Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 703 F. Supp. 2d 671, 684, 686, 687 (W.D. Ky. 2010), *aff'd,* 679 F.3d 410 (6th Cir. 2012) (noting that the wax seal made Maker's Mark bottles look artisanal and holding that red wax sealing atop the bottles of Maker's Mark bourbon was not functional even though it helped seal the bottle closed); *Vuitton et Fils S.A. v. J. Young Enters., Inc.*, 644 F.2d 769, 776 (9th Cir. 1981) (holding that the Louis Vuitton logo was not functional because: "If the Vuitton mark increases consumer appeal only because of the quality associated with Vuitton goods, or because of the prestige associated with owning a genuine Vuitton product, then the design . . . is identifying the source of the product and thus should be protected"). Instead, Mexcor must show that it cannot legitimately compete without copying the Purple Bag®.[5]

The evidence demonstrates that cloth bags (or an imitation Purple Bag®) are not necessary to compete. ██████████████████████████████

---

[5] Mexcor's argument about the bags' marketing desirability seems to be a backdoor way of arguing that because the Purple Bag® is a bag, it "confers a significant benefit upon consumers that cannot practically be duplicated by alternative designs" and cannot be protected. *See Who Dat Yat Chat, LLC v. Who Dat, Inc.*, Nos. Civ. A. 10-1333, 10-2296, 2012 WL 1118602, at *13 (E.D. La. Apr. 3, 2012). This concept is aesthetic functionality, which the Fifth Circuit has rejected. *See Smack Apparel*, 550 F.3d at 487.

14

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████

████████████████   Indeed, Mexcor has admitted that its [State] CROWN CLUB

products and Diageo's CROWN ROYAL® product are the only alcoholic

beverages that come in bags bearing the word CROWN.  Exhibit 16 (Mexcor's

Responses to Diageo's Requests for Admission ("RFA Responses")) at 1-3.

Crown Royal® whisky is the leading brand of Canadian whisky in the

United States, but other brands of Canadian whisky do not need a bag to compete

with it.  Exhibit 16 (RFA Responses 34 & 35).  ██████████████████████

██████████████████████████████████████████

████████████████████████████████████████.

Canadian Club, which lacks a cloth/velvet drawstring bag, ██████████████

█████████████████████████████████████████

██████.  Clearly, cloth bags are unnecessary for Mexcor to compete.

### e.    Mexcor's Case Law Regarding Functionality Is Inapposite

Mexcor cites two inapposite cases regarding *de facto* secondary meaning in

functional items.  The first case, *Am. Online, Inc. v. AT&T Corp.*, 243 F.3d 812

(4th Cir. 2001), differs significantly from the case at bar because the status

notification "You Have Mail" served a functional purpose related to providing

email messages.  Specifically the message accurately and descriptively informed users that "[They] Have Mail."  *See id.* at 819.  The Purple Bag® does not help a consumer drink whisky.  Furthermore, America Online never attempted to register the "You Have Mail" message with the USPTO and never sought to enforce its use of that phrase.  *Id.*  By contrast, Diageo owns an incontestable federal trademark registration for the Purple Bag® mark and has in fact enforced that mark against E.&J. Gallo Winery.  Exhibits 1, 1A, and Mexcor Exhibit M.

Mexcor's other case, *Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.*, 626 F.2d 193, 195 (1st Cir. 1980), is also inapposite.  Indeed, it is difficult to argue the features in *Fisher Stoves* like four legs on an iron stove, the color black to radiate heat, and a two level stove top to create turbulence aiding combustion are not functional, which plaintiff apparently attempted to do.  *See id.* at 195.

### 3. Mexcor Fails To Show There Is No Likelihood Of Confusion

Mexcor spills much ink attempting to dodge liability, but it surprisingly fails to address many digits of confusion enumerated in *Bd. of Supervisors for La. State Univ. Agric. & Mech. College v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008).  Indeed, its brief is silent about (i) the similarity of the goods, (ii) the identity of the retail outlets and purchasers, (iii) the identity of the advertising media used, (iv) Mexcor's intent, and (v) the degree of care exercised by potential purchasers.  *See id.*  Also, Mexcor barely addresses the similarity of the marks.

16

This contrasts with Diageo's MSJ, which methodically analyzed all of the digits of confusion, each of which weighs heavily in Diageo's favor. *See* Dkt. No. 88.

### a. Third Party Use Of The Word, "Crown" Has Not Meaningfully Weakened Diageo's CROWN-Formative Marks

#### i. None Of The Third Party Products Mexcor References Weaken Diageo's CROWN-Formative Marks

Mexcor fails to cite a single third party product that negatively impacts the strength of the CROWN ROYAL® mark.  None of the third party products that use the word "crown" are sold in a bag.  *See* Exhibit 16 (RFA Responses 1-3).  Nor do any of these third party products display the word "crown" as the most prominent element of their label the way that Mexcor does with its [State] CROWN Club line of whiskies.  Each product that Mexcor cites in its Motion is distinguishable.

Canadian Crown does not compare to Crown Royal® whisky because it is a value-branded beverage, ███████████████████████████. *See* Exhibit 18 (Frank-Lin Tr. 47:16-48:15) and ███████████████████. Also, Canadian Crown has limited geographical distribution.  Exhibit 18 (Frank-Lin Tr. 17:19-18:25).  It is not sold in a bag.  *Id.* at 40:10-19.

Potter's Crown also has limited geographic distribution.  It is mostly sold in California, Idaho, Illinois, Florida, New York, North Carolina, Montana, Oregon, Tennessee, Texas, Utah, and Washington.  *Id.* at 15:4-11.  Furthermore, it is not

sold in a bag or in a squat bottle, and it is not advertised or promoted, which contrasts starkly with the hundreds of millions of dollars Diageo spends annually to advertise and promote Crown Royal® whisky. *Id.* at 16:10-12; 41:4-10 and Exhibit 19 (Declaration of A. Wise, Dkt. No. 88-43, Diageo MSJ Exhibit 84) at ¶7. Simply put, when viewed side-by-side, Potter's Crown and CROWN ROYAL® whisky are not confusingly similar.

Crown Harris is yet another alcoholic beverage that is not advertised or promoted. *See* Exhibit 20 (Sazerac Tr. 47:6-9). It is sold only in Idaho to value-minded consumers. Exhibit 18 (Frank-Lin Tr. 42:16-43:7) and Exhibit 20 (Sazerac Tr. 46:10-15; 47:6-9). It is not sold in a bag. Exhibit 18 (Frank-Lin Tr. 40:20-22) and Exhibit 20 (Sazerac Tr. 46:20-47:2).

Crown Russe vodka and gin are not Canadian whiskies. Like the preceding products, they are only sold in limited geographic areas (15-20 states total) and are not advertised or promoted. Exhibit 20 (Sazerac Tr. 49:4-8; 50:11-16; 52:7-13). They are not sold in bags. *Id.* at 72:17-25.

Similarly, Crown Czar vodka is not a Canadian whisky, and like almost every product Mexcor cites concerning the word "crown," it is distributed in only a handful of states. Indeed, Crown Czar is primarily sold in California and Oregon. *See* Exhibit 18 (Frank-Lin Tr. 20:6-16). It is not sold in bags. *See id.* at 19:22-20:5 and Exhibit 21.

18

Beefeater Crown Jewel is likewise irrelevant.  Its owner, Pernod Ricard USA LLC, discontinued it in 2007, before any of Mexcor's [State] CROWN Club products entered the market.  Exhibit 22 (Pernod Ricard Tr. 23:20-24:11).  When it was on the market, it was targeted to travel retail, ██████████████████ ██████████.  *See id.* at 24:3-7 and ███████.  It was not sold in a bag.

As for the remaining products cited in Exhibit P, Gold Crown, King's Crown, and Crown Sterling, Mexcor has not presented admissible evidence that these products are currently in the marketplace nor that they have had any impact on the CROWN ROYAL® trademark. ████████████████████ ████████████████████████████████████ ██████████████████████████.  At most, these pictures constitute meager evidence of minor third party use, most of which appears to predate the CROWN ROYAL® mark.  None is sold in a bag.

### ii.    Mexcor's Case Law Is Inapposite

Neither of the cases Mexcor cites to try to undermine the strength of Diageo's CROWN-formative marks are on point.  In *Sun Banks of Florida, Inc. v. Sun Federal Savings and Loan Association*, 651 F.2d 311 (5th Cir. 1981), the word "sun" was not held to be strong and distinctive because over 4,400 businesses registered with the Florida Secretary of State used the word.  Mexcor makes no showing that even remotely approaches such widespread use of the word.  *See id.*

19

at 316.  Unlike Diageo, which extensively markets Crown Royal® whisky playing on the word "crown" (*e.g.* "For Every King, A Crown"), the *Sun Banks* court found "significant the fact that neither party has ever used the name 'Sun' alone in its advertising." *Id.* at 318.  *See also* Exhibit 23.

Similarly, because Columbia University almost never presented the name "Columbia" alone, *Trustees of Columbia University v. Columbia/HCA Healthcare Corp.*, 964 F. Supp. 733, 745-46 (S.D.N.Y. 1997) is inapposite.  *See also* Exhibit 23.  The *Columbia* Court also found it significant that the services offered by the parties were distinct.  *See id.* at 746.  Here the parties both offer identical goods – Canadian whisky, sold in the same stores, to the same consumers, in bags, prominently displaying the term CROWN, side-by-side on store shelves.

**b.    Mexcor Fails To Establish That Limited Use of Bags By Third Parties Has Weakened the Purple Bag® Mark**

The limited third-party use of cloth/velvet bags to enclose spirits does not advance Mexcor's Motion one whit.  None of these other uses also feature the word "Crown" prominently on the bag like Mexcor does on its [State] CROWN Club whiskies.  *See* Exhibit 16 (RFA Responses 1-3).  In fact, Mexcor recognizes that the Purple Bag® mark is strong despite these third party uses by interpreting the Poret survey to mean that ██████ "customers simply assume that an alcoholic beverage bag must be related to the CROWN ROYAL brand."  *See* Mexcor's Motion at 13-14, 24.

20

Additionally, the evidence belies Mexcor's attempts to play up extremely limited third-party use of cloth bags to enclose whisky.  For example ███████

████████████████████████████████████████████

████████████████████  ███████████████████████

████████████████████████████████████████

█████████████████████████████. These bags are available only in control states during holiday periods.  *See id.* at 28:4-22; 29:3-25.

Mexcor cites Canadian Club Classic 12 ("Classic 12") as another Canadian whisky that supposedly comes in a cloth drawstring bag.  Yet Mexcor fails to disclose that Beam Inc.'s ("Beam") corporate representative testified that it does not sell, ship, or package Classic 12 in bag.  Exhibit 24 (Beam Tr. 12:16-22; 17:18-25; 37:6-25; 40:13-15).[6]  Beam has not sold Classic 12 in a bag since 2005.  *Id.*

████████████████████████████████████████████

███████████████████████████.

Nor do Tito's Handmade Vodka's ("Tito's") bags weaken the Purple Bag® mark.  ███████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

---

[6] Beam owns the Classic 12 brand.  *See* Exhibit 24 (Beam Tr. 26:7-9).

21

████████████████████████████████████████

███████████████████████████████.

Pernod Ricard USA LLC sells very limited amounts of Royal Salute Scotch Whisky.  It has sold about 5,000 cases of Royal Salute in the past four-and-a-half years in the United States.  Exhibit 22 (Pernod Ricard Tr.110:7-15).  Each bottle retails for $180-200, which far exceeds the cost of Crown Royal® whisky.  *See Id.* at 53:22-54:6 and █████████████████.  Unlike Crown Royal ® whisky, Royal Salute is not advertised.  Exhibit 22 (Pernod Ricard Tr. 21:16-22:1).

Caribou Crossing is likewise inapposite.  Sazerac Co., Inc. sells Caribou Crossing in less than half of the United States.  Exhibit 20 (Sazerac Tr. 21:15-22; 66:8-15).  Unlike Mexcor's [State] CROWN Club and Diageo's Crown Royal® whiskies, Caribou Crossing comes in just the 750 mL size.  *Id.* at 21:10-14.  Sazerac does not advertise or promote Caribou Crossing, in contrast to the advertising and promotion that both Mexcor and Diageo undertake for the products at issue here.  *See id.* at 67:20-68:7 and ███████████████.  Lastly, Caribou Crossing is a $50 craft product, ████████████████  ██████  Exhibit 20 (Sazerac Tr. 21:19-25; 67:18-19) and ███████████  ██████.

Similarly, Blanton's Bourbon, which Sazerac also sells, is not advertised and is meant for bourbon aficionados. *See* Exhibit 20 (Sazerac Tr. 42:21-43:6). Even then, only half of each case comes in a bag. *Id.* at 40:5-23; 42:13-17.

Sazerac also partially owns the Pappy Van Winkle bourbon brand. *Id.* at 32:19-22. This unadvertised specialty bourbon caters to bourbon aficionados and usually does not appear on store shelves. *See id.* at 36:1-23; 81:13-82:14. In fact, "most of the product is held and locked up in a back room for consumers who have preordered it." *Id.* at 82:8-10. It is not available nationwide and is produced in very limited quantities. *See id.* at 33:5-7; 35:4-13.

Order of Merit whisky is not available for sale at all because Constellation Brands stopped selling this brand between 1999 and 2001. Exhibit 17 (Constellation Tr. 42:8-43:14; 100:3-17). In fact, Mexcor lacks any probative evidence that Order of Merit was ever sold in a cloth bag after the 1960s. *See id.* at 42:8-16; 43:6-14; 101:1-7; 103:2-16.

Mexcor claims that Flor de Cana rum, Rebecca Creek whisky, and Enchanted Rock vodka come in bags, but it presents scant evidence of this. Indeed, the only evidence that these products are sold in bags comes from the expert report of Kenneth B. Germain who allegedly purchased these products in bags. *See* Mexcor Exhibit X. This paltry evidence is potentially hearsay and fails to demonstrate that the bags are analogous to the Purple Bag® mark. Therefore,

23

these alleged uses of bags do not weaken Diageo's trademark rights in the Purple

Bag®.

### c.     Mexcor Fails To Demonstrate That Its [State] CROWN Club Marks Are Materially Dissimilar From Diageo's Marks

#### i.     "Crown" Is The Most Dominant Feature Of Mexcor's [State] CROWN Club Marks

The word "crown" is the most prominent part of Mexcor's [State] CROWN

Club mark.  Determining the similarity of the marks requires the Court to view the

combination of the individual elements "as a whole."  *Tex. Tech. Univ. v.*

*Spiegelberg*, 461 F. Supp. 2d 510, 521 (N.D. Tex. 2006) ("Although individual

features of the design are relevant . . . the Court should focus on the commercial

impression of the mark as a whole") (internal quotations and citation omitted).

Mexcor makes the word "crown" the largest word on its bottles of whisky.  ███

███████████, Exhibit 26 (Gutierrez Tr. 19:2-16), and Exhibit 6 (*see*

Morales Tr. 40:11-14; 146:6-150:8).  █████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

███████.

        "Crown" is the largest word on Mexcor's cloth/drawstring bags, and has

been since their introduction in late 2011 for Texas and 2012-2013 for the

remaining states.  *See* ███████████████ and Exhibit 6 (Morales Tr.

58:19-22; 59:1-5). Its other [State] CROWN Club products make the word "crown" the most eye-catching feature on the bag, with gold cursive font highly reminiscent of the font Diageo uses for Crown Royal® whisky. Indeed, "the Crown is written just like Crown. I mean it looks just like" CROWN ROYAL®. Exhibit 27 (Lovell Tr. 13:3-5).

Mexcor's emphasis that Diageo does not own cursive or gold font misses the point. As used in commerce, these elements of Mexcor's [State] CROWN Club products, when combined with the size of the word "crown," infringe Diageo's CROWN-formative marks.

### ii. Consumers Focus On The Word "CROWN," Underscoring Its Prominence

It is undisputed that consumers frequently refer to Crown Royal® whisky as "Crown." Indeed, an assistant manager for a liquor store testified that consumers commonly refer to Crown Royal® whisky simply as "Crown." Exhibit 10 (Josey Tr. 18:10-20). ██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████.

Illustrating the importance of "Crown" to both parties' marks, Mexcor's Texas CROWN Club Facebook page administrator testified that consumers often refer to Crown Royal® as "Crown," but unfortunately for Diageo, they now also

refer to Texas CROWN Club as simply "Crown." *See* Exhibit 11 (Coira Tr. 5:19-25; 33:10-34:21).  Indeed, when shown an exhibit where a consumer asked where he could purchase a Texas bag for "Crown," Mr. Coira could not state whether the consumer was referring to Texas CROWN Club whisky or Crown Royal® whisky. *See id.* at 34:17-21.  That Jose Coira could not tell whether a consumer was referring to Texas CROWN Club whisky or Crown Royal® whisky highlights the similarity of the parties' CROWN-formative marks and likely confusion.

### iii. The Federal Courts Have Jurisdiction To Decide Trademark Infringement, Not USPTO Trademark Examiners

Mexcor's evidence that examining attorneys in the United States Patent Trademark Office registered their [State] CROWN Club marks does not mean there is no likelihood of confusion. *See* Mexcor Exhibit X.  As Mexcor's own case law recognizes, "Congress left no doubt that the PTO's decisions regarding registrations fall under the supervision of federal courts." *Am. Online, Inc.*, 243 F.3d at 817.  Indeed in "none of these provisions conferring on federal courts the power to adjudicate rights under the Lanham Act does Congress instruct the courts to review registration decisions of the PTO under a deferential standard." *Id. See also End Prod. Results, LLC v. Dental USA, Inc.*, No. 12-11546, 2014 WL 897363, at *4 (E.D. Mich. Mar. 6, 2014) (holding that USPTO's registration of a mark did not undermine Plaintiff's ability to prove likelihood of confusion on the merits).

26

Recognizing that the USPTO's finding is not binding on this Court, Mexcor tries to strengthen its evidence by claiming 39 instances in which the office purportedly found no likelihood of confusion. Mexcor Motion at 4, 18. In reality, the Trademark Examiner found no likelihood of confusion and registered Mexcor's desired [State] CROWN Club marks just six times. *See* Mexcor Exhibit X at 19, ¶18(c) and Exhibit 5B.

Moreover, Mexcor has cited no authority for the proposition that its registrations have any probative value concerning likelihood of confusion in this case. It should be noted that Mexcor's registrations were obtained *ex parte*, with no third party challenge. These *ex parte* registrations contrast with registrations obtained in cases before the Trademark Trial and Appeal Board ("TTAB") after a party has opposed an application or sought to cancel a registration on grounds of likelihood of confusion. Accordingly, there was no "adjudication" of Mexcor's marks on the issue of likelihood of confusion. *A fortiori* an *ex parte* registration by a Trademark Examiner should be entitled to no weight on likelihood of confusion. The law is actually still unsettled on what deference, if any, an inter-parties decision by the TTAB on likelihood of confusion should be given by District Courts. The Supreme Court is reviewing a petition for certiorari on the issue of whether decisions in inter-parties proceedings before the TTAB on likelihood of confusion are entitled to preclusive weight in these district courts. *See B&B*

*Hardware, Inc. v. Hargis Indus., Inc.*, 716 F.3d 1020 (8th Cir. 2013), *petition for cert. filed*, 134 S. Ct. 982 (2014).  Thus, it follows that mere approval of a trademark application by the Trademark Examiner with no adjudication by the parties to a subsequent litigation should be given no weight.

### iv.   Mexcor's [State] CROWN Club Bags Are Highly Similar To The Purple Bag® Mark

Mexcor fails to show that its [State] CROWN Club bags sufficiently differ from the Purple Bag® to avoid confusion.  Rather than addressing the look of the bags "as a whole," Mexcor myopically concentrates on minutiae.  *See Tex. Tech. Univ.*, 461 F. Supp. 2d at 521.  Both the Purple Bag® and Mexcor's imitation bags are made of cloth, have drawstrings and prominently feature the word "crown."  Indeed, only the Purple Bag® and Mexcor's [State] CROWN Club bags share these characteristics.  *See* Exhibit 16 ( RFA Responses 1-3).

As several of Diageo's witnesses have confirmed, any purported differences between the Purple Bag® and Mexcor's knockoff bags fail to adequately distinguish the competing whiskies.  Indeed, a confused consumer confirmed that the purported differences do not matter:

> Q: Is it fair to say that even notwithstanding the differences between the two [bags], you were still – you still thought the Texas Crown bag was Crown Royal at the time that you first saw it?
>
> A: When I first saw it, yes, sir, I'm not going to lie.  I believe it was a commemorative kind of like Christmas.  You know, I got camo red

28

> and whatnot.  I got all sorts of Crown bags.  So, yeah, when I first
> seen it, yes, I was confused . . . ."

Exhibit 29 (Ledbetter Tr. 37:4-14).  Consumers disregard the alleged differences

between the bags because, for example, "Crown Royal has lots of different bags"

Exhibit 27 (Lovell Tr. 24:19-23) and "has different appearances on a lot of their

bags."  *Id.* at 27:25-28:6; *see* Exhibit 29 (Ledbetter Tr. 37:4-14).  Indeed, the fact

that Diageo has overwhelming evidence of rampant consumer confusion (*see*

Diageo MSJ, Dkt. No. 88) makes Mexcor's citation to *Am. Home Prods. Co. v.*

*Barr Labs., Inc.*, 834 F.2d 368 (3d Cir. 1987) unpersuasive.  There, the plaintiff

only had a methodologically flawed likelihood of confusion survey; they had no

anecdotal evidence of confusion.  *See Am. Home Prods. Co. v. Barr Labs., Inc.*,

656 F. Supp. 1058, 1070 (D.N.J.), *aff'd*, 834 F.2d 368 (3d Cir. 1987).

Accordingly, Mexcor cannot evade liability by focusing on insignificant

differences in the parties' bags.

### d.   Mexcor Fails To Overcome Diageo's Overwhelming And Undisputed Evidence Of Actual Confusion

By trying to downplay the overwhelming evidence of rampant consumer

confusion as initial interest confusion, ***Mexcor concedes that Diageo is entitled to***

***summary judgment on its trademark infringement and unfair competition***

***claims.***  Mexcor actually admits that "some customers may initially associate

TEXAS CROWN CLUB with CROWN ROYAL because it is in a cloth bag and

uses the word Crown." Mexcor Motion at 28. That is a startling admission and not only compels denial of Mexcor's Motion, it establishes that Diageo is entitled to summary judgment on its trademark infringement and unfair competition claims.[7] *See* Dkt. No. 88. The Fifth Circuit recognizes that "[i]nfringement can be based upon confusion that creates initial consumer interest, even though no actual sale is finally completed as a result of the confusion." *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 204 (5th Cir. 1998) (quotations and citation omitted); *see also RE/MAX Int'l, Inc.*, 655 F. Supp. 2d at 707 ("Initial-interest confusion is especially relevant when the parties are direct competitors in the same market.").

Having admitted there is confusion, Mexcor's attack of Dr. Isaacson's likelihood of confusion survey is irrelevant. Actual confusion can be proven with anecdotal evidence, a survey, or both. *See RE/MAX Int'l, Inc.*, 655 F. Supp. 2d at 704. Here, Diageo has both, but Dr. Isaacson's survey is not necessary to finding a likelihood of consumer confusion.

Nonetheless, Diageo strongly disagrees with Mexcor's criticisms of Dr. Isaacson's study. ███████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

---

[7] While Mexcor has admitted "initial interest" confusion, Diageo has extensive undisputed evidence that consumers were not just "initially confused," but rather actually mistakenly purchased Mexcor's products believing them to be CROWN ROYAL® whisky.

████████████████████████████████████

████████████████████████████████████

███

Mexcor bases its claim that consumer confusion is "negligible" on a false premise – that the design of all of its [State] CROWN Club whiskies remained static from the introduction of Texas CROWN Club in May 2008 through the time Diageo brought this lawsuit. It did not. *See supra* at pp. 4-6 and Diageo's accompanying Opposition To Defendants' Motion For Summary Judgment On The Grounds Of Laches And Limitations.

Mexcor cannot refute Andrew Josey's undisputed testimony that he knows of at least 50 consumers who believed South Carolina CROWN Club was somehow affiliated with Crown Royal®. Such testimony is not hearsay under Fifth Circuit precedent.[8] *See, e.g., Armco, Inc. v. Armco Burglar Alarm Co.*, 693 F.2d 1155, 1160 n.3 (5th Cir. 1982) (introducing testimony from person with knowledge of confused consumers was not hearsay, and even if it were, it is admissible as a present sense impression); *Conversive, Inc. v. Conversagent, Inc.*,

---

[8] Mexcor's citation to *Duluth News-Tribune, a Div. of Nw. Publ'ns., Inc. v. Mesabi Publ'g Co.*, 84 F.3d 1093 (8th Cir. 1996) is inapplicable because in that case, the consumers called the plaintiff to clarify whether the two newspapers were associated. *See id.* at 1098. By contrast, Andrew Josey testified that between 10-30 % of consumers were confused "basing that on them referring to [South Carolina CROWN Club] as Crown Royal or having a conversation with them where they realize it's not a Crown product and they express they believed it to be." Exhibit 10 (Josey Tr. 22:15-21). In any event, *Duluth News-Tribune* appears to be an outlier.

31

433 F. Supp. 2d 1079, 1091 (C.D. Cal. 2006) (collecting cases concerning the admissibility of a witness' testimony about confused third parties, and holding the Fifth Circuit's precedent persuasive).  This rampant actual consumer confusion makes sense because, ███████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████.

Moreover, Mexcor avoids any discussion of the two confused witnesses in Houston, Texas who posted comments on Texas CROWN Club's Facebook page showing they were confused and who also gave sworn declarations that they were confused.  *See* Exhibit 30 at ¶2 and Exhibit 31 at ¶3.  Both posted comments believing that Texas CROWN Club was a Crown Royal® whisky product.  Exhibit 30 at ¶4 and Exhibit 31 at ¶4.  Mexcor does not mention these confused consumers because it has nothing to say.  Indeed, despite seeking and obtaining leave to exceed the ten deposition limit under the Federal Rules to take depositions of these witnesses, Mexcor chose not to depose them.

## CONCLUSION

For all of the foregoing reasons, Diageo respectfully requests the Court deny

Defendants' Motion For Summary Judgment On Trademark Infringement And

Unfair Competition Claims.  *See* Exhibit 32 (Proposed Order).

DATED:  June 9, 2014

Respectfully Submitted,

*/s/ Benjamin M. Rattner*
PROSKAUER ROSE LLP
Brendan J. O'Rourke*
Adam D. Siegartel*
Benjamin M. Rattner*
Lee M. Popkin*
Eleven Times Square
New York, NY 10036
Tel:  212.969.3000
Fax:  212.969.2900
brattner@proskauer.com

*Admitted *pro hac vice*

FULBRIGHT & JAWORSKI LLP
Linda L. Addison
Melanie B. Rother
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Tel:  713.651.5151
Fax:  713.651.5246
linda.addison@nortonrosefulbright.com

*Attorneys for Diageo
North America, Inc.*

33

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that pursuant to Fed. R. Civ. P. 5(b), on this 9th day of June, 2014, a true and correct copy of the foregoing Diageo North America, Inc.'s Opposition To Defendants' Motion For Summary Judgment On Trademark Infringement And Unfair Competition was served upon the following counsel of record in this matter via ECF and FTP transfer:

William D. Raman
Steve A. Fleckman
Joseph M. Leak
Fleckman & McGlyn, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas 78701

William A. Worthington
Strasburger & Price, LLP
909 Fannin Street, Suite 2300
Houston, Texas 77010

*/s/ Benjamin M. Rattner*
Benjamin M. Rattner