IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DIAGEO NORTH AMERICA, INC., | § § | |
| Plaintiff and Counter-Defendant, | § § | |
| v. | § § | C.A. NO. 4:13-cv-00856 |
| MEXCOR, INC. AND EJMV INVESTMENTS, LLC, | § § § | **Jury** |
| Defendants and Counter-Plaintiffs. | § § | |

### MEXCOR'S MOTION TO AMEND JUDGMENT, AND/OR FOR JUDGMENT AS A MATTER OF LAW

Mexcor, Inc. and EJMV Investments, LLC ("*Mexcor*") file this Motion to Amend Judgment pursuant to FED. R. CIV. P. 59(e), and/or for Judgment as a Matter of Law pursuant to FED. R. CIV. P. 50(b), and respectfully state as follows:

1. On December 18, 2014 the Court entered a judgment in favor of Plaintiff, Diageo North America, Inc. ("*Diageo*"), for $401,228 in damages.

2. **The Judgment Should be Amended to Reflect the Court's Grant of Judgment to Mexcor as a Matter of Law During Trial**: Prior to the entry of that judgment, however, the Court had already granted judgment as a matter of law in favor of Mexcor on December 11, 2014 at the jury charge conference, finding— based upon the testimony of Diageo Vice President Yvonne Briese and the

concessions of Plaintiff's counsel—that Mexcor's Texas Crown Club bottle label in use for its Canadian whisky is non-infringing. Trial Tr. Vol. 7, p. 201-02.

3. Mexcor respectfully requests that the December 18 judgment be amended to reflect that the use of Texas Crown Club in the trademarked designs reflected on Mexcor's Canadian whisky bottle does not infringe any rights of Diageo.

4. Additionally, Mexcor requests an amendment to the judgment (i) pursuant to Rule 59(e), and/or (ii) as a matter of law under Rule 50(b) (consistent with its FED. R. CIV. P. 50(a) motion for directed verdict presented on December 11, 2014) as to the following matters, requesting that the December 18 judgment be further amended accordingly:

5. **Mexcor is Entitled to Amendment of the Judgment to Reflect that its Other "State" Crown Club marks are Non-Infringing**: Diageo has admitted (and the Court has ruled) that Texas Crown Club, as depicted on Mexcor's bottle, does not infringe. *See* Diageo's Rule 50(a) motion ("***Diageo's Laches Motion***"), Dkt. 177, p. 4.  This means that the Texas Crown Club mark, as currently stylized on Mexcor's bottle and also as a word mark, is sufficiently dissimilar from Diageo's trade dress that it is not likely to cause confusion or dilution.  Mexcor is therefore entitled to judgment that the use of *other* State Crown Club marks in a similar format (i.e., no cursive Crown), and the word marks themselves, are not

infringing as a matter of law. This follows logically from (i) Plaintiff's admission that the Texas Crown Club label is non-infringing, and (ii) the fact that Plaintiff has not claimed (and has no basis to claim) trademark rights in a state name or in the word Southern. It also follows from the stipulation in Diageo's Laches Motion that "it is undisputed that Mexcor's alleged infringement began, *at the earliest*, during the fourth quarter of 2011 when Mexcor began selling its Texas Crown Club products *in bags bearing the Texas Crown Club logo*." Dkt. 177, p. 4 (emphasis added). Significantly, Mexcor made prominent use of its Texas Crown Club marks on billboards and in other advertising and promotional materials long prior to the last quarter of 2011. *See, e.g.*, DX 7.13, 7.14, 7.28, and 7.41. Indeed, the only thing that changed in the last quarter of 2011 was the application of the Texas Crown Club logo to a bag. Because it is undisputed that Mexcor was using its Texas Crown Club trademark and stylized logos (without a bag) since 2008 and Diageo has admitted that all such use (not on a bag) is non-infringing, Diageo has effectively conceded that the use of Mexcor's State Crown Club *word* marks for Canadian whisky is non-infringing where such marks are not used in connection with bags.[1] Just as judgment was granted confirming Mexcor's right to use Texas

---

[1] The fact that Diageo knew the word marks are non-infringing is further evidenced by its knowing decision not to oppose the application to register the trademark, Tennessee Crown. DX 62 and 63; Trial Tr. Vol. 2, p. 23-26 [Briese cross-examination]; Trial Tr. Vol. 5, p. 48-52 [Germain direct examination]). In August 2012, Plaintiff requested an extension of time to object to Mexcor's trademark

Crown Club without a bag, the judgment should be amended to reflect that such use by Mexcor of its State (or region) Crown Club marks is also non-infringing.

6. **The Judgment Should be Amended to Reflect that Mexcor's Flag Bags (without Crown) Are Non-Infringing**: Diageo's Laches Motion also states as an "undisputed fact" that "In 2009, Mexcor began selling Texas Crown Club in bags…. None of those bags depicted the Texas Crown Club logo." Dkt. 177, p. 3. Because Diageo conceded that no infringement occurred prior to Mexcor's application of Crown to a bag (at the earliest, in the last quarter of 2011), Mexcor's original Texas "flag bag" without the word Crown is non-infringing, and therefore the judgment should reflect that Mexcor is entitled to use its non-purple flag bag (without Crown) for the sale of Canadian whisky. *See* Mexcor's Rule 50(a) Motion, Trial Tr. Vol. 7, pp. 204-05. This request is further supported by Diageo's admission that it has no exclusive right to the use of a velvet cloth bag for alcoholic beverages. Trial Tr. Vol. 1, p. 205 [Briese cross-examination].

7. **Diageo's State Law Dilution Claim Must be Denied as a Matter of Law**: Because Diageo's Laches Motion admits that Texas Crown Club as it appears on the bottle is non-infringing, Mexcor's three federal trademark registrations for Texas Crown Club marks (all of which appear on the bottle) are

---

application for Tennessee Crown, but allowed that extension to expire, and never filed any opposition to that word mark with the PTO. (This was even after Diageo had knowledge of Mexcor's use of Crown on a bag. *See* DX 15.4-15.5.)

valid.[2] Pursuant to the express language of 15 U.S.C. §1125(c)(6), all state causes of action for dilution relating to the use of Mexcor's registered marks are therefore preempted as a matter of law, and the judgment should reflect that Diageo's claim of dilution under Texas state law is denied.

8. Likewise, Diageo's admissions that Texas Crown Club (without a bag) is non-infringing and that the 2009 Texas flag bag (sold prior to 2011) was non-infringing means those trademarks and that flag bag are sufficiently dissimilar and distinctive as to preclude any likelihood of dilution as a matter of law under 15 U.S.C. §1125(c).

9. **There is No Likelihood of Dilution of Diageo's Purple Bag Trade Dress as a Matter of Law**: Also, Mexcor's State and Southern Crown Club trademarks and trade dress are so dissimilar from Diageo's Purple Bag trade dress, with the only common element being the weak and highly diluted term Crown, that there is no likelihood of dilution of Diageo's trade dress as a matter of law. 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 24:87 (4th ed.) ("No Dilution of Already Diluted Mark"); *Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1210 (1st Cir. 1983) ("If the other registrations and uses of the 'ASTRA' mark have not already diminished the uniqueness of

---

[2] Texas Crown Club word mark (U.S. Reg. No. 3,738,906), DX 1.47; Texas Crown Club and derrick design (U.S. Reg. No. 3,810,852), DX 1.77; Texas Crown Club and crown and star design (U.S. Reg. No. 3,810,851), DX 1.62.

Astra's mark, [defendant's] use of it on its [product] will not diminish it either."). Diageo admits (and has represented to the PTO) that it has no exclusive right to Crown, and that the word Royal is what makes its mark distinctive. Trial Tr. Vol. 2, p. 74 [Briese cross-examination]; DX 13.12-13.18 [Diageo's Response to PTO Office Action re chocolates]; *see also Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 604 (9th Cir. 1996) (A party is judicially estopped from taking a position in Court that is contrary to its prior position in an administrative proceeding). The judgment should be amended to deny all relief under 15 U.S.C. §1125(c) and under TEX. BUS. & COMM. CODE §16.103.

10. **Diageo Presented No Evidence that its Purple Bag Trade Dress Acquired "Fame" Among the General Consuming Public**: Moreover, as a matter of law, under 15 U.S.C. §1125(c)(1) and TEX. BUS. & COMM. CODE §16.103, Diageo failed to prove its state and federal claims of dilution because it adduced no evidence to show that its Purple Bag trade dress had acquired fame to the general consuming public, either in Texas or nationally, before Mexcor's allegedly infringing acts began. Although it presented evidence of substantial advertising expenditures and efforts, it is the effects of the advertising, not the magnitude of the expenditures that is determinative of whether consumer recognition (including fame) exists. *Aloe Crème Laboratories, Inc. v. Milsan, Inc.*,

423 F.2d 845, 850 (5th Cir. 1970).³  Diageo acknowledged that its efforts overwhelmingly targeted a niche market, consisting of a specific audience of males 21 to 49, and not the general consuming public. Trial Tr. Vol. 2, p. 86 [Briese cross-examination]. Evidence of niche market fame is not adequate proof of fame under the applicable statutes. *See* 15 U.S.C. §1125(c)(2)(A) and TEX. BUS. & COMM. CODE §16.103(b); *see also Bd. of Regents, Univ. of Texas Sys. ex rel. Univ. of Tex. at Austin v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 675 (W.D. Tex. 2008) ("Simply because UT athletics have achieved a level of national prominence does not necessarily mean that the longhorn logo is so ubiquitous and well-known [as] to stand toe-to-toe with Buick or KODAK.").

11.    Diageo's state and federal dilution claims depend on its proof that its trade dress had achieved fame among the general consuming public (including non-drinkers) before the allegedly infringing use began. *See T-Mobile US, Inc. v. Aio Wireless LLC*, No. H-13-2478, 2014 WL 1651949, at *37-38 (S.D. Tex. Jan. 22, 2014) (finding survey evidence focused on niche market insufficient to support finding of fame, and citing McCarthy's 75% hurdle of recognition among general public as indicative of the survey evidence necessary to establish fame); *see also*

---

³ Much of this advertising focused on the Crown Royal brand, rather than on the Purple Bag trade dress. Diageo presented no evidence of awareness of the Purple Bag trade dress among the general consuming public. (Hal Poret's survey was limited to Canadian whisky drinkers, and he conceded that it did not purport to address fame. Trial Tr. Vol. 4, p. 115, 144 [Poret examination].)

*Quicken Loans, Inc. v. Nationwide Biweekly Admin., Inc.*, No. 13-13431, 2014 WL 505576, at *6 (E.D. Mich. Feb. 7, 2014) (Court rejected dilution claim for "Quicken Loans" because it was based on niche market fame); *It's a 10, Inc. v. Beauty Elite Group, Inc.,* No. 13-60154-CIV, 2013 WL 6834804, at *8 (S.D. Fla. Dec. 23, 2013) (granting summary judgment on lack of fame, where millions in advertising and sales and top selling product status illustrated laudable success in plaintiff's industry, but "do not begin to establish, however, that Plaintiff's marks have accumulated the cultural heft to transform them from mere trademarks – even strong ones – to a household name that is instantly recognizable among the general public of the United States"); *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 911-12 (9th Cir. 2002) (applying a nation-wide fame standard and affirming summary judgment for defendant on dilution claim where the evidence showed that the TREK mark was familiar only to bicycle enthusiasts"). Diageo presented no expert as to fame, and admitted it had no survey evidence showing that its marks were famous nationally or statewide among the general consuming public, and certainly presented no such evidence focused on the final quarter of 2011 when the allegedly infringing acts began. Trial Tr. Vol. 2, p. 88-89 [Briese cross-examination]. Thus, Diageo failed to prove its state and federal claims of dilution as a matter of law.

12. **Diageo's Trade Dress Infringement Claims Should Be Denied as a Matter of Law Because any Alleged Confusion Evidence Resulted Only from Mexcor's Use of a Non-Infringing, Functional Bag**:  To the extent any alleged (or likely) confusion may have existed among consumers of the parties' products resulting from the use of the allegedly infringing bags, Plaintiff's own survey evidence reveals that such confusion or likelihood of confusion was engendered by *de facto* secondary meaning associated with a functional item—a cloth bag used to contain and carry an alcoholic beverage, and also useful for myriad other purposes. As established by Diageo's expert, Mr. Poret, in a nationally projectable survey, 22% of Canadian whisky drinkers associated even a non-infringing cloth liquor bag (without any logo) with Crown Royal. Trial Tr. Vol. 4, p. 143-144.  Secondary meaning in a functional item does not create protectable trademark rights, and therefore consumer confusion associated with such secondary meaning is not legally actionable. *See* 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 6.63, at 7-178.3 (4th ed. 2013); *accord, W.T. Rogers Co., Inc. v. Keene,* 778 F.2d 334, 338 (7th Cir. 1985) ("[T]he concept of functionality is intended to screen out from the protection of trademark law certain design features even if they become so far identified with the manufacturer of a particular brand that consumers may be confused about the origin of the good if another producer is allowed to adopt the feature."); *Merch. & Evans, Inc. v. Roosevelt Bldg. Products*

*Co. Inc.,* 963 F.2d 628, 640 n.12 (3d Cir. 1992) ("[I]f a product feature is functional, even a likelihood of confusion will not give rise to a trademark violation."); *Talking Rain Beverage Co. Inc. v. S. Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003) (Because design was found to be functional, "we need not reach the distinctiveness and likelihood of confusion issues.").

13. The Isaacson survey introduced by Diageo failed to include a control consisting of a non-infringing cloth bag, although the test participants were required to view a bag. As Isaacson acknowledged, use of an appropriate control is essential to a survey because the control results must be netted out against the test results to yield valid statistical conclusions. Trial Tr. Vol. 4, p. 109-111 and p. 141-142 [Poret examination]; Trial Tr. Vol. 3, p. 221-223 [Isaacson examination]. By failing to use a bag in the control cell, the survey therefore failed to exclude the probability that some or all of the alleged confusion resulted simply from a reflexive association between a dissimilar functional bag and Crown Royal's product. Indeed, the live and deposition testimony of some witnesses who were allegedly confused revealed that their confusion resulted in whole or in part from the use of a dissimilar bag. DX 68, 27:4-10 [Ledbetter Deposition]; DX 69, 20:4-18 [Moore Deposition]; Trial Tr. Vo. 4, p. 163-164 [Lovell's cross-examination].

14. Diageo has admitted it has no exclusive right to the use of velvet bags as containers for alcoholic beverages. Trial Tr. Vol. 1, p. 205 and Vol. 2, p. 35

[Briese cross-examination]. Such bags are utilitarian marketing tools that serve a purpose other than reputational significance and are therefore functional under the law. *See Qualitex Company v. Jacobson Products Company*, 514 U.S. 159, 166 (1995) (recognizing that color can act as a trademark symbol that distinguishes a firm's goods and identifies their source, where it serves no other significant function); *accord, Poly-Am, L.P. v. Stego Indus., LLC*, 3:08-CV-2224-G, 2011 WL 3206687, at *10 (N.D. Tex. July 27, 2011) (traditional test of functionality distinguishes "product features that only serve to identify a product's source from those that serve 'any other significant function'") (citing *Qualitex*, 514 U.S. at 166), *aff'd*, 482 F. App'x 958 (5th Cir. 2012) (per curiam); *Ideal Toy Corp. v. Plawner Toy Mfg. Corp.*, 685 F.2d, 78, 81 (3rd Cir. 1982). Given consumers' desire for such cloth bags, and the extreme dissimilarity of Mexcor's bags in contrast to the registered Purple Bag trade dress, denying Mexcor the right to use dissimilar cloth bags with a non-infringing trademark, such as the Texas Crown Club logo, improperly confers upon Diageo exclusive rights in a dissimilar functional item and places Mexcor at a significant competitive disadvantage. *See Traffix Devices, Inc. v. Mktg. Displans, Inc.*, 532 U.S. 23, 32 (2001). Accordingly, judgment should be granted in Mexcor's favor dismissing Diageo's trade dress claims because Diageo failed to prove that any alleged confusion or dilution resulted from anything other than *de facto* secondary meaning in a functional item

for which Diageo has no exclusive rights. *See Pilot Corp. of America v. Fisher-Price, Inc.*, 501 F. Supp. 2d 292 (D. Conn. 2007); *see also Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 414 (6th Cir. 2006) (actual confusion over source of toy car was not probative of likelihood of confusion caused by rival toy's mimicry of registered grille design because confusion may not have related to the grille); 3A CALLMANN ON UNFAIR COMP., TR. & MONO. § 21:82 (4th Ed.) ("If plaintiff uses more than one indicium of origin, the court may refuse to give weight to actual confusion that might have been caused by a mark other than the one at issue."). For these reasons, the damages award should be vacated.

15. **Mexcor is Entitled to Judgment as a Matter of Law that Mexcor's Current Bag *Displaying the Texas Crown Club Logo* is also Non-Infringing**: That bag is not only dissimilar from Diageo's Purple Bag in virtually every feature described in Diageo's Purple Bag registration (PX 015), but the Mexcor bag is merely a combination of a Texas Crown Club logo (expressly admitted by Diageo to be *non-infringing*) with the pre-2011 Texas flag bag (likewise admitted by Diageo to be *non-infringing*). Because Diageo's Laches Motion admits that the current Texas Crown Club logo on the bottle is sufficiently distinctive to avoid a likelihood of confusion or dilution (i.e., infringement), the application of that non-

infringing logo to a dissimilar functional bag that is also non-infringing does not infringe as a matter of law, and the judgment should so reflect.[4]

        Respectfully Submitted,

        */s/ William D. Raman*

        **William D. Raman, Attorney in Charge**
        Email: Raman@fleckman.com
        Texas Bar No. 16492700
        Southern District ID No. 4117
        **Steven A. Fleckman**
        Email: Fleckman@fleckman.com
        Texas Bar No. 07118300
        Southern District ID No. 550541
        **Joseph M. Leak**
        Email: jmleak@fleckman.com
        Texas Bar No. 24070115
        Southern District ID No. 1121957

        FLECKMAN & MCGLYNN, PLLC
        515 Congress Avenue, Suite 1800
        Austin, Texas 78701
        Telephone No. (512) 476-7900
        Facsimile No. (512) 476-7644

---

[4] This is further supported by Diageo's acknowledgment that it is the word Royal that gives meaning to the word Crown and makes its use of Crown distinctive. Trial Tr. Vol. 2, p. 74 [Briese cross-examination]; DX 13.12-13.18 [Diageo's Response to PTO Office Action re chocolates].

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was filed on the 15th day of January, 2015 with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel:

Linda L. Addison
Melanie B. Rother
Fulbright & Jaworski, LLP
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
laddison@fulbright.com
(713) 751-5246 – Facsimile

Brendan J. O'Rourke
Adam D. Siegartel
Benjamin M. Ratner
Proskauer Rose, LLP
Eleven Times Square
New York, NY 10036
(212) 969-2900 – Facsimile

/s/ William D. Raman
William D. Raman