# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS

DIAGEO NORTH AMERICA, INC.,

      Plaintiff and Counterdefendant,

      v.

MEXCOR, INC. and
EJMV INVESTMENTS, LLC,

      Defendants and Counterclaimants.

Case No. 4:13-cv-856 (DH) (SWS)

**JURY DEMANDED**

# DIAGEO NORTH AMERICA INC.'S REPLY IN FURTHER SUPPORT OF
# ITS MOTION FOR A PERMANENT INJUNCTION

Brendan J. O'Rourke*
Adam D. Siegartel*
Benjamin M. Rattner*
Lee M. Popkin*
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Tel:  212.969.3000
Fax:  212.969.2900
*Admitted *pro hac vice*

Linda L. Addison
Melanie B. Rother
FULBRIGHT & JAWORSKI LLP
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Tel:  713.651.5151
Fax:  713.651.5246

*Attorneys for Diageo
North America, Inc.*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................1

ARGUMENT ..................................................................................1

I.   DIAGEO'S MOTION IS TIMELY...............................................1
     A.   The Court's December 18 Order is Not a Final Judgment ..................1

     B.   Diageo's Motion Is Timely Even if Rule 59 Applies ..........................3

     C.   Equity Demands that Diageo's Motion Is Timely ................................5

II.  DIAGEO IS ENTITLED TO PERMANENT INJUNCTIVE RELIEF ..........6
     A.   Diageo Has Suffered Irreparable Harm.................................6

     B.   Mexcor's Conditional Cessation Does Not Moot Diageo's
          Request for Injunctive Relief ..................................................8

          1.   Mexcor's Assertion that it is Not Currently Selling
               Infringing Goods is Not Determinative ........................................8

          2.   In the Absence of an Injunction, it is Possible That
               Mexcor Will Resume Infringement of
               CROWN ROYAL®'s Famous Trade Dress .............................10

III. THE SCOPE OF THE INJUNCTIVE RELIEF IS NARROWLY
     TAILORED ...............................................................................12
     A.   Diageo's Proposed Injunction is Not Overly Broad ...........................13

     B.   Diageo's Proposed Injunction is Not Vague ........................................14

CONCLUSION ..............................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abraham v. Alpha Chi Omega*,
708 F.3d 614 (5th Cir. 2013) ...............................................................................6

*Apple Inc. v. Samsung Elecs. Co.Ltd.*,
735 F.3d 1352 (Fed. Cir. 2013) .........................................................................11

*Bank One, Texas, N.A. v. Taylor*,
970 F.2d 16 (5th Cir. 1992) .................................................................................5

*Elvis Presley Enters., Inc. v. Capece*,
141 F.3d 188 (5th Cir. 1998) .........................................................................8, 11

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000).............................................................................................11

*FTC v. Affordable Media, LLC*,
179 F.3d 1228 (9th Cir. 1999) .............................................................................8

*GeoSouthern Energy Corp. v. Chesapeake Operating Inc.*,
241 F.3d 388 (5th Cir. 2001) ...............................................................................3

*Haas v. Bellsouth Telecomms., Inc.*,
No. 98-60197, 1999 U.S. App. LEXIS 40649 (5th Cir. June 9,
1999) .....................................................................................................................2

*Harolds Stores v. Dillard Dep't Stores, Inc.*,
82 F.3d 1533 (10th Cir. 1996) .............................................................................2

*In re Skyport Global Communs., Inc.*,
No. 08-36737-H4-11, 2013 Bankr. LEXIS 3218 (Bankr. S.D. Tex.
Aug. 7, 2013) ......................................................................................................13

*ITT Educ. Servs. v. Arce*,
533 F.3d 342 (5th Cir. 2008) .........................................................................7, 12

*John Doe #1 v. Veneman*,
380 F.3d 807 (5th Cir. 2004) ...............................................................................7

*John H. Harland Co. v. Clarke Checks, Inc.*,
711 F.2d 966 (11th Cir. 1983) ...........................................................................14

*Liberty Mut. Ins. v. Wetzel*,
424 U.S. 737 (1976).............................................................................................2

*M -F-G Corp. v. EMRA Corp.*,
821 F.2d 410 (D.C. Cir. 1987)...........................................................................12

*Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*,
703 F.Supp. 2d 671, 701 (W.D. Ky. 2010), aff'd 679 F.3d 410 (6th
Cir. 2012). ...........................................................................................................8

*Mary Kay, Inc. v. Weber*,
661 F. Supp. 2d 632 (N.D. Tex. 2009) ...................................................13, 14, 15

*McNabola v. Chicago Transit Authority*,
10 F.3d 501, 520-21 (7th Cir. 1993).....................................................................4

*Miltimore Sales, Inc. v. Int'l Rectifier*,
412 F.3d 685 (6th Cir. 2005) ...............................................................................4

*Palmetto State Medical Ctr. v. Operation Rescue*,
No. 90-2688, 1994 U.S. App. LEXIS 23729 (4th Cir. Aug. 31,
1994) .....................................................................................................................3

*Planetary Motion, Inc. v. Techsplosion, Inc.*,
261 F.3d 1188 (11th Cir. 2001) .........................................................................15

*Planned Parenthood Fed'n of Am., Inc. v. Bucci*,
No. 97 Civ. 0629,1997 ......................................................................................15

*Reader's Digest Assoc. v. Conservative Digest*,
821 F.2d 800, 807 (D.C. Cir. 1987).....................................................................12

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*,
No. 2:08-CV-16, 2014 U.S. Dist. LEXIS 177363 (E.D. Tex. Nov.
10, 2014) .............................................................................................................13

*S. Snow Mfg. Co. v. Snowizard Holdings, Inc.*,
2014 U.S. Dist. LEXIS 57264 (E.D. La. Apr. 24, 2014).....................................8

*Seven-Up Co. v. Coca-Cola*,
   86 F.3d 1379 (5th Cir. 1996) ..............................................................................12

*Southwest La. Healthcare Sys. v. Argil Tarpon Mgmt., LLC*,
   281 Fed. App'x. 326, 2008 U.S. App. LEXIS 12317 (5th Cir.
   2008) ......................................................................................................................3

*Tolleson v. Livingston*,
   No. 2:12-CV-201, 2014 WL 1386319 (S.D. Tex. Apr. 9, 2014) ........................2

*Witherspoon v. White*,
   111 F.3d 399 (5th Cir. 1997) ..............................................................................3

**STATUTES**

28 U.S.C. § 1291 ....................................................................................................2, 3

Lanham Act .............................................................................................................12

iv

Diageo North America, Inc. ("Diageo") submits this reply memorandum in further support of its Motion for a Permanent Injunction (the "Motion").

## PRELIMINARY STATEMENT

Mexcor's infringing and diluting [State] CROWN Club products have caused Diageo irreparable harm, entitling Diageo to injunctive relief.  Indeed, such relief is necessary to protect Diageo's famous CROWN ROYAL® trade dress from future infringement.

Not one of Mexcor's arguments changes these essential facts or demonstrates that injunctive relief should not be granted.  First, because the Court has not entered a final judgment, Diageo's motion is timely.  Second, the jury's verdict and the evidence support a permanent injunction.  Third, Mexcor's representation that it has stopped using its infringing trade dress is at best equivocal and does not cover the entirety of Mexcor's infringing conduct.  Finally, Diageo's requested injunctive relief is appropriate in scope.  It is narrowly tailored to match the offending conduct that the jury found dilutive and infringing.

## ARGUMENT

### I.     Diageo's Motion Is Timely

#### A.     The Court's December 18 Order is Not a Final Judgment

Conveniently forgetting the last five months of settlement negotiations, Mexcor contends that Diageo's motion for a permanent injunction is untimely under either Rule 59(e) or 60(b).  Mexcor is wrong.  Rules 59(e) and 60(b) are

implicated only upon entry of a final judgment.  The Court's December 18, 2014

Order (Dkt. 195) did not address Diageo's claim for injunctive relief and therefore

cannot be a final judgment as a matter of law.  *See* FED. R. CIV. P. 54(a); *Tolleson*

*v. Livingston*, No. 2:12-CV-201, 2014 WL 1386319, at \*2 (S.D. Tex. Apr. 9,

2014).

The United States Supreme Court addressed this issue in *Liberty Mut. Ins. v.*

*Wetzel*, 424 U.S. 737, 744 (1976).  In *Wetzel*, the plaintiffs obtained a judgment

from the district court resolving liability in their favor, but "le[aving] unresolved

[plaintiffs'] requests for an injunction."  *Id.*  at 742.  The Court explained that

judgments leaving the "assessment of damages or awarding of other relief . . . to be

resolved have never been considered to be 'final.'"  *Id.* at 744.  *See also Haas v.*

*Bellsouth Telecomms., Inc.*, No. 98-60197, 1999 U.S. App. LEXIS 40649, at \*3

(5th Cir. June 9, 1999); 28 U.S.C. § 1291; FED. R. CIV. P. 54(b); 15B Charles Alan

Wright & Arthur R. Miller, *Federal Practice and Procedure* §3915.2 (2d

ed.)(explaining that "[p]artial determinations of relief do not establish finality any

more than a determination of liability alone.").  Because the district court's order

did not address plaintiffs' requested a permanent injunction, it was not a final

judgment.  *Id.*; *see also Harolds Stores v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533,

1541 (10th Cir. 1996) (holding that an order was not a final order where it

"resolve[d] claims for damages presented to a jury at trial but fail[ed] to dispose of a claim for injunctive relief. . . .").[1]

The *Wetzel* and *Harolds* decisions apply here.  In its Complaint, Diageo specifically and explicitly requested injunctive relief.  *See* Dkt. 1 at 27- 31.  The Court's December 18 Order did not address Diageo's claim for injunctive relief.  Accordingly, it was not a final judgment and the Court retains the power to hear and decide Diageo's injunction motion.  *See e.g., GeoSouthern Energy Corp. v. Chesapeake Operating Inc.*, 241 F.3d 388, 391-392 (5th Cir. 2001) (holding that a decision adjudicating liability but not damages was not a final judgment); *Palmetto State Medical Ctr. v. Operation Rescue*, No. 90-2688, 1994 U.S. App. LEXIS 23729, at *4-5 (4th Cir. Aug. 31, 1994) (holding that judgment was not a final order because it did not address injunctive relief plaintiff requested in its complaint).

### B.   Diageo's Motion Is Timely Even if Rule 59 Applies

Diageo is not seeking, as Mexcor suggests, to amend a judgment.  Dkt. 218 at 7-8.  Rather, Diageo is seeking adjudication of its request for a permanent injunction.  Accordingly, Rule 59 is not applicable to this Motion.

---

[1] The fact that the Court included the phrase "final judgment" does not make the December 18, 2014 Order a final judgment under 28 U.S.C. § 1291.  *See Southwest La. Healthcare Sys. v. Argil Tarpon Mgmt., LLC*, 281 Fed. App'x. 326, 2008 U.S. App. LEXIS 12317 (5th Cir. 2008) (district court's label not determinative); *Witherspoon v. White*, 111 F.3d 399, 401 (5th Cir. 1997) (explaining that "labeling a judgment as final does not make it so.")).

But even if Rule 59 were to apply, Diageo's motion would still be timely. Mexcor proves this point in its own brief.  Mexcor cites only one case – *McNabola v. Chicago Transit Authority* – for the proposition that its Rule 59(e) motion does not extend Diageo's deadline to file its Rule 59(e) motion.  *See* Dkt. 218 at 8; 10 F.3d 501, 520-21 (7th Cir. 1993).  *But see Miltimore Sales, Inc. v. Int'l Rectifier*, 412 F.3d 685, 691 (6th Cir. 2005) ("[A] timely filed Rule 59(e) motion destroys the finality of judgment . . . .").  Although Mexcor fails to mention it, the *McNabola* rule applies only to *unrelated* Rule 59(e) motions.  *See McNabola*, 10 F.3d at 520 ("McNabola's motion . . .requested that the court alter the judgment in a way that was unrelated to the CTA's. . .motion.").  Here, Diageo filed its motion for a permanent injunction largely in response to Mexcor's Rule 59(e) request to amend the judgment.  Therefore, even if it were the law of this circuit, *McNabola* does not prevent consideration of Diageo's Motion.

During trial, Mexcor represented that it had changed its trademarks and ceased using its infringing trade dress outside of the state of Texas.  *See* Ex. 1 (Trial Tr. Vol. 5, p. 209:18-24).  Diageo did not learn that Mexcor intended to continue using any portion of its infringing trade dress outside the state of Texas – or that it intended to continue selling Texas CROWN Club in bags – until Mexcor

filed its motion to amend the judgment. *See* Dkt. 211 at ¶¶ 2-6, 15.[2]  Mexcor then confirmed its intention to continue using [State] CROWN Club word marks in an April 9, 2015 email. *See* Ex. 2.  Diageo filed its Motion as a result of these changed circumstances and therefore the timing of its filing is permissible under Rule 59(e).

C.   Equity Demands that Diageo's Motion Is Timely

Following trial, the Court encouraged the parties to engage in settlement discussions.  Heeding the Court's advice, the parties attempted to reach a settlement that would obviate the need for court intervention on this issue.  Diageo thus did not file its Motion until these discussions reached an impasse.  Mexcor now seeks to use Diageo's good faith efforts to settle as grounds for denying Diageo the injunctive relief to which it is entitled.  Rule 60(b) gives this Court discretion to relieve a party from a final judgment for "any other reason that justifies relief."  FED. R. CIV. P. 60(b)(6); *see also Bank One, Texas, N.A. v. Taylor,* 970 F.2d 16, 33 n.18 (5th Cir. 1992) (properly considering a motion filed outside the time parameters of Rule 59(e) as a Rule 60 motion).  Even if the Court determined that there was a final judgment, and Diageo's motion was not timely under Rule 59(e), the Court could still consider Diageo's Motion under Rule 60.

---

[2] Mexcor's motion seeks a judgment that would entitle it to use its [State] CROWN Club marks, even though a unanimous jury found that these products are likely to confuse consumers. *See id.*

## II.   Diageo is Entitled to Permanent Injunctive Relief

### A.   Diageo Has Suffered Irreparable Harm

In this Circuit, a finding of likelihood of confusion is "[a]ll that must be proven to establish liability and the need for an injunction against infringement . . . – injury is presumed." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013); *see also* MCCARTHY ON TRADEMARKS § 30.1 ("A permanent injunction is the usual and normal remedy once trademark infringement has been found.").  The jury in this matter was instructed to determine "whether the trade dress of Mexcor's products is likely to cause confusion among ordinary consumers. . . ." Dkt. 193 at ¶7.  On the basis of that instruction, the jury made a specific finding that there was a likelihood of confusion between Mexcor's State [CROWN] Club trade dress and Diageo's famous CROWN ROYAL® trade dress.  *See* Dkt. No. 193 at 1.[3]  Accordingly, Diageo established that it has suffered irreparable harm from Mexcor's infringement.  In addition, the Court will undoubtedly recall that there was not only a *likelihood* of confusion, there was substantial evidence that numerous consumers had *actually* been confused. [4]

---

[3] Despite this jury finding, Mexcor takes the remarkable position that the jury found that only some of its products are infringing.  *See* Dkt. at 16.  Mexcor's position and the jury verdict cannot be reconciled.

[4] As discussed at length in Diageo's Motion, the record includes extensive and persuasive evidence supporting the jury's finding of likelihood of confusion and demonstrating that Diageo suffered irreparable harm.  *See* Dkt. 217.01 at 4-10.

Mexcor attempts to circumvent the jury's finding of irreparable harm by arguing that the verdict was "ambiguous."  *See* Dkt. 218 at 15-16.  Mexcor admits that the jury answered "yes" to the question regarding likelihood of confusion, but asserts that this is an insufficient basis for an injunction because the jury did not make separate findings regarding the trade dress of each [State] CROWN Club product.  *Id.*  This is simply not the law.

Under Fifth Circuit law, "[t]he scope of injunctive relief is dictated by the extent of the violation established. . . . [and] must [be] narrowly tailor[ed] to… the specific action which gives rise to the order."  *John Doe #1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004).  Here, the jury found that Mexcor's trade dress – "the overall image of the product [and] its packaging" – was infringing.  Dkt. 193 at ¶ 6.  The jury determined that *all* of Mexcor's [State] CROWN Club products infringe CROWN ROYAL®'s famous trade dress.  There is nothing ambiguous about this finding.[5]  Because Mexcor's [State] CROWN Club products *collectively* give rise to the need for an injunction, it follows that the order should wholly prohibit Mexcor from continuing to use the infringing trade dress of any of its [State] CROWN Club products.  *See ITT Educ. Servs. v. Arce*, 533 F.3d 342, 348 (5th Cir. 2008) (holding that injunction was not overbroad where it "did not exceed the

---

[5] Mexcor's unsupported, stubborn insistence that the jury concluded that some of its products are noninfringing underscores the need for injunctive relief.

scope of activity properly before the district court."); *see also* Proposed Order, Dkt

217.16.

      B.     <u>Mexcor's Conditional Cessation Does Not Moot Diageo's<br>    Request for Injunctive Relief</u>

            1.    *Mexcor's Assertion that it is Not Currently Selling<br>        Infringing Goods is Not Determinative*

Mexcor argues that because it has allegedly discontinued the use of its

infringing trade dress, there is "no need to award injunctive relief." Dkt. 218 at 13.

Despite this professed intent, injunctive relief is still necessary to protect Diageo

from the possibility of future infringement. *See, e.g., Elvis Presley Enters., Inc. v.

Capece*, 141 F.3d 188, 198 (5th Cir. 1998) (affirming grant of injunctive relief "in

spite of the Defendants professed intent to discontinue infringing activities."); *S.

Snow Mfg. Co. v. Snowizard Holdings, Inc.*, 2014 U.S. Dist. LEXIS 57264, at *37

(E.D. La. Apr. 24, 2014) (injunction appropriate even where defendants

represented that they had ceased selling or changed the name of the infringing

products); *see also FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1237-38 (9th

Cir. 1999) ("[A]n action for an injunction does not become moot merely because

the conduct complained of was terminated. . .otherwise the defendant[] would be

free to return to [its] old ways.").

In *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, the court rejected an

argument almost identical to the one Mexcor advances here. 703 F.Supp. 2d 671,

701 (W.D. Ky. 2010), *aff'd* 679 F.3d 410 (6th Cir. 2012).  In that case, the

defendant asserted that an injunction was inappropriate because: 1) it had not used

the infringing trade dress – the dripping wax seal – in over five years; and 2) there

was "no proof that it intend[ed] to resume."  *Id.*  The court disagreed and instead

determined that "equity support[ed] injunctive relief."  *Id.*

   In arriving at its decision, the court in *Maker's Mark* paid particular attention

to the reason the defendants stopped using the trade dress at issue in the litigation.

In that case, the CEO of Cuervo testified that although he would prefer to use a

dripping wax seal, he stopped using it "because he did not want a legal fight. . . ."

*Id.*  The court held that this cessation was a "practical business judgment" and did

not dictate whether an injunction should issue.  *Id.*  The same is true here.  Morales

testified that he stopped selling [State] CROWN Club products because he "had to

make the business decision to temporarily stop selling state Crown Clubs outside

of Texas until this trial would be held and a decision would be made" and that he

"intend[ed] to resume selling the other [State] Crown Club products if the litigation

[wa]s resolved in [his] favor."  Ex. 2 (Trial Tr. Vol. 5, p. 192:3-15).  Accordingly,

here, as in *Maker's Mark*, an injunction should issue.  Indeed, "equity. . .requires

that [Diageo] receive some tangible evidence of successfully protecting its

trademark rights."  *Maker's Mark*, 703 F.Supp. 2d at 701 (explaining that such

"tangible evidence. . . arms the holder with a legal weapon by which it can fend off infringing use.").

      2.    *In the Absence of an Injunction, it is Possible That Mexcor Will Resume Infringement of CROWN ROYAL®'s Famous Trade Dress*

Mexcor asserts in its moving papers that it "has no intention of resuming use of any challenged trade dress…without Court approval," but it is far from clear that this is actually the case. Dkt. 218 at 11. The representations Morales makes in his declaration are not nearly as sweeping as Mexcor's brief makes them out to be. For example, Morales states that Mexcor does not intend to resume sale of "*Canadian* whisky product in a [State] Crown Club bag *bearing a [State] Crown Club logo*. . . ." Dkt. 218-3 at ¶ 3 (emphasis added). This, of course, leaves open the possibility that Mexcor will continue to infringe Diageo's trade dress by selling Canadian whisky in a bottle with the [State] CROWN Club label and a bag without the [State] CROWN Club logo. [6] It also leaves room for Mexcor to sell another type of whisky – American, Scotch, Irish, or even a blend of Canadian and American – in its infringing [State] CROWN packaging.

Indeed, the entire takeaway from Morales' declaration is that he is hedging his bets. To defeat Diageo's Motion, Morales asserts that Mexcor has no plans to

---

[6] That Mexcor does not seem to view such a product – a [State] CROWN Club whisky sold in a cloth bag that does not bear a [State] CROWN Club logo – as an infringement further supports the need for the Court to enter an injunction in this case.

continue selling its infringing goods, but at the same time states that if given any sort of green light (or gray area to maneuver), Mexcor will go right back to doing so.  Given the conditional nature of every single one of Morales' representations regarding Mexcor's future plans, Mexcor's current cessation does not moot Diageo's claim for an injunction.  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("The heavy burden of persua[ding] the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness") (internal quotation and citation omitted); *see, e.g., Elvis Presley*, 141 F.3d at 196 (affirming grant of injunction where the court found a "definite possibility" that the Defendants would resume their infringing practices) (internal citation omitted).

Nor do the cases Mexcor cites in support of its mootness argument compel a different result.  Not one involves a court confronted with the possibility that the defendant will resume sale of the infringing goods or a similarly infringing derivation of those goods.  *See*, *e.g.*, *Apple Inc. v. Samsung Elecs. Co.Ltd.*, 735 F.3d 1352, 1375 (Fed. Cir. 2013) (finding an injunction unnecessary where there was "no evidence*"* that the defendant would resume selling the infringing products.)[7]  Here, by contrast, the conditional nature of the representations in

---

[7] It should also be noted that, as the Court in *Apple* points out, it is the defendant's burden to show that it will not infringe again.  *Id.* at 1374.  Morales' cagey declaration can hardly be said to satisfy this burden.

Morales' declaration and Mexcor's incorrect assertion that it can sell [State] CROWN Club in a bag as long as the bag does not bear a [State] CROWN Club logo, suggest that without an injunction, Mexcor will resume at least some of its infringing conduct.

The other cases Mexcor cites are even less helpful to its position. The plaintiffs in *Seven-Up Co. v. Coca-Cola*, 86 F.3d 1379 (5th Cir. 1996)[8] and *M-F-G Corp. v. EMRA Corp.*, 821 F.2d 410 (D.C. Cir. 1987) did not prevail on the merits of their respective Lanham Act claims. Clearly an injunction would not be appropriate where the plaintiff has not prevailed on the merits of the dispute. In *Reader's Digest Assoc. v. Conservative Digest*, the court granted an injunction, it was simply narrower in scope than the injunction the plaintiff requested. 821 F.2d 800, 807 (D.C. Cir. 1987).

### III.    The Scope of the Injunctive Relief is Narrowly Tailored

Under Rule 65, an injunction must "state its terms specifically" and "describe in reasonable detail. . .the act or acts retrained or required." FED. R. CIV. P. 65(d)(1)(B)–(C). Mexcor argues that Diageo's proposed injunction is both broad and vague. *See ITT*, 533 F.3d at 348 (the "broadness" of an injunction refers to the range of proscribed activity whereas "vagueness" refers to the particularity of the description of the proscribed activity).

---

[8] Moreover, *Seven-Up* involved false advertising claims, not trademark infringement claims.

## A.   Diageo's Proposed Injunction is Not Overly Broad

Once "a competitive business. . .[is] convicted of unfair competition. . . [it]should thereafter be required to keep a safe distance away from the margin line . . . ." *Mary Kay, Inc. v. Weber*, 661 F. Supp. 2d 632, 641 (N.D. Tex. 2009) (quoting *Chevron Chem. Co. v. Voluntary Purchasing Grps., Inc.*, 659 F.2d 695, 705 (5th Cir. 1981)).  Under this "safe distance" standard, it is eminently reasonable for the injunction to include a prohibition that extends beyond Canadian whisky.  If it did not, then Mexcor could, for example, sell American whisky using its infringing [State] CROWN Club trade dress and evade the reach of the injunction.  *See, e.g., Retractable Techs., Inc. v. Becton, Dickinson & Co.,* No. 2:08-CV-16, 2014 U.S. Dist. LEXIS 177363, at *24 (E.D. Tex. Nov. 10, 2014) (rejecting defendant's proposed injunction where defendant could use advertisements "so similar" to the infringing advertisements "that the injunctive relief would be a sham.").[9]

It is also reasonable for the proposed injunction to include reference to product names as well as trade dress.  *See* Dkt 217.16.  After years of using [State]

---

[9] Contrary to Mexcor's assertion, the fact that Diageo's proposed injunction extends to "alcohol" does not mean that it would prohibit Mexcor from selling DOS CORONAS in a bag.  *See* Dkt. 218 at 17.  Although Corona means "crown" in Spanish, the plain language of the proposed injunction, and certainly the parties' understanding of what it would cover, is limited to the English word "crown." *See In re Skyport Global Communs., Inc.*, No. 08-36737-H4-11, 2013 Bankr. LEXIS 3218, at *143-44 (Bankr. S.D. Tex. Aug. 7, 2013) (explaining that the "overriding consideration [under Rule 65(d)] is whether the enjoined parties understand what conduct. . . is prohibited.").

CROWN Club marks in a way that violated the law, "it would be nearly impossible for the[se] names. . .not to be imbued with infringing meaning." *Mary Kay*, 659 F.2d at 641-42.  Accordingly, the injunction should extend to these infringing word marks.  This is especially true because while out of one corner of its mouth Mexcor claims to have ceased use of the [State] CROWN Club mark, out of the other corner it seeks an amended judgment expressly authorizing it to use the [State] CROWN Club mark and has refused to cancel its application to register its Florida CROWN Club word mark.  *See* Ex. 2.  In sum, particularly when viewed in the context of the "safe distance" standard, Diageo's requested injunctive relief is not overly broad.  *See id.* at 647 (courts should "keep th[e] 'safe distance standard' in mind when determining the scope of [an appropriate] injunction.").

### B.   Diageo's Proposed Injunction is Not Vague

The last paragraph of Diageo's proposed injunction seeks to enjoin Mexcor from using any "trade dress that is confusingly similar to or dilutes the famous CROWN ROYAL® trade dress." Dkt 217.16.  This phrase does not make Diageo's proposed injunction vague.  As Mexcor notes, an "injunction which *merely* forbids a defendant from. . .infringing on plaintiff's trademarks. . .adds nothing to what the law already requires," *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, (11th Cir. 1983) (emphasis added) (internal citations and quotations omitted).  But the proposed injunction here does not *merely* forbid

Mexcor from infringing Diageo's marks.  Rather, when the proposed order is "read as a whole, [it] clearly indicates what [Mexcor] is forbidden from doing." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1204 (11th Cir. 2001) (injunction prohibiting defendant from using "'coolmail' or any similar mark" was neither vague nor overbroad).  Further, courts in this circuit and others have granted injunctions containing similar language.  *See, e.g., Mary Kay*, 659 F.2d at 647 (entering injunction ordering the defendant not to use plaintiff's marks in a way likely to cause confusion); *Planned Parenthood Fed'n of Am., Inc. v. Bucci*, No. 97 Civ. 0629, 1997 WL 133313, at *12 (S.D.N.Y. Mar. 24, 1997), *aff'd* 52 F.3d 920 (2d Cir. 1998) (granting preliminary injunction prohibiting defendant from using "any colorable imitation of the Planned Parenthood® mark, and any thing or mark confusingly similar thereto or likely to cause dilution of the [mark]").  Diageo's proposed injunction is not vague and is consistent with the jury's unanimous verdict.

## **CONCLUSION**

For all of the foregoing reasons, the Court should permanently enjoin Mexcor from infringing CROWN ROYAL®'s trade dress.


[signature on next page]

June 15, 2015

Respectfully Submitted,

s/ Brendan J. O'Rourke

PROSKAUER ROSE LLP                    FULBRIGHT & JAWORSKI LLP
Brendan J. O'Rourke*                  Linda L. Addison
Adam D. Siegartel*                    Melanie B. Rother
Benjamin M. Rattner*                  Fulbright Tower
Lee M. Popkin*                        1301 McKinney, Suite 5100
Eleven Times Square                   Houston, Texas  77010-3095
New York, NY 10036                    Tel: 713.651.5151
Tel: 212.969.3000                     Fax: 713.651.5246
Fax: 212.969.2900
*Admitted *pro hac vice*

*Attorneys for Diageo North America, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that pursuant to Fed. R. Civ. P. 5(b), on this 15th day

of June, 2015, a true and correct copy of the foregoing Diageo's Reply in Further

Support of Its Motion for a Permanent Injunction was served upon the following

counsel of record in this matter via ECF:

William D. Raman
Steve A. Fleckman
Joseph M. Leak
Fleckman & McGlyn, PLLC
515 Congress Avenue, Suite 1800
Austin, Texas 78701

William A. Worthington
Strasburger & Price, LLP
909 Fannin Street, Suite 2300
Houston, Texas 77010

s/ Brendan J. O'Rourke

Brendan J. O'Rourke